[Civ. No. 42147. Second Dist., Div. Five. June 10, 1974.]

LYNN WOOD et al., Plaintiffs and Appellants, v.
LOUIS HERSON, Defendant and Respondent.

738

## COUNSEL

Steven Edmondson and Victor Amstadter for Plaintiffs and Appellants.

Milton Zerin for Defendant and Respondent.

## OPINION

**HASTINGS, J.**—Louis Herson (Herson), in July 1970, sued Lynn and Ward Wood (Woods), husband and wife, in the superior court for unlawful detainer relating to real property commonly known as 625 Ocean Front, Santa Monica, California.[1] A judgment was entered in said case (WE C 19737) on November 24, 1970. On October 13, 1970, Woods as plaintiffs sued Herson and several Does with a complaint entitled "Complaint for specific performance to impose a trust and damages for interference of contract." Defendant Herson on June 2, 1972, filed a notice of motion for summary judgment on the ground that the complaint for specific performance contained the exact subject matter covered in the action for unlawful detainer, and that all of the issues in the present case were raised in the unlawful detainer action, and since judgment in that case was rendered on November 24, 1970, plaintiffs' action is barred

---

[1]Pursuant to the request of this court the superior court file No. WE C 19737 has been transmitted to this court. (Rule 12(a), Cal. Rules of Court.)

by the doctrine of res judicata. The trial court first granted a partial summary judgment, striking the first cause of action, and thereafter on further consideration granted a summary judgment striking the balance of the complaint (the second cause of action) and expunged the lis pendens recorded by Woods on said property.

## DISCUSSION

To understand the issues on appeal, it is necessary to know what transpired in the unlawful detainer action. While the complaint was orthodox in form, Woods pleaded an affirmative defense which in substance was identical to their first cause of action in the case at bar. This, of course, was a challenge to plaintiff's title which normally is not a permissible issue in an unlawful detainer action. The findings of the trial court clearly illustrate that it permitted evidence to be introduced on title as raised by the affirmative defense. These findings definitely influenced the trial court here and were the reasons for its granting of the summary judgment. In essence, the pertinent findings are as follows (the paragraph numbers are the same as in the findings):

■ Plaintiff [Herson] is entitled to possession of the premises located at 625 Ocean Front by reason of the purchase of said property at a sale thereof in accordance with section 2924 of the Civil Code.

■ On July 7, 1970, the marshal served on defendants [Woods] a notice to quit.

■ Defendants Woods are in possession of the premises located at 625 Ocean Front.

■ The reasonable rental value of the premises after June 4, 1970, to date hereof is $1,750 per month, and $2,000 per month thereafter, and plaintiff has sustained damage by reason of said unlawful detainer.

■ Defendants Woods were purchasers under an assumed name pursuant to written escrow instructions with Peter Lawford. Defendant Lynn Wood was the subject of a petition in bankruptcy, and by reason thereof defendants had endeavored to take title in the name of a friend, Alma Mason. However, Alma Mason was under the disability of a conservatorship, so defendants attempted to take title through a corporation, Soundtronics, Inc., controlled by their attorney.

■ The first trust deed encumbrance upon the premises was in foreclosure by the City National Bank of Beverly Hills by reason of the default of Peter Lawford.

■ Defendants Woods were endeavoring to obtain a loan of approximately $125,000 from American Savings & Loan Association to consummate their purchase from Peter Lawford. Defendants, in connection with the loan, requested plaintiff to act as guarantor for a loan to them, and subsequently to purchase the property in his name and to obtain a loan from American Savings & Loan Association. Plaintiff declined to be either a guarantor of a loan or purchaser of property for defendants.

■ It is not true that prior to foreclosure of the premises it was orally agreed by and between plaintiff and defendants that plaintiff would cause a new first trust deed encumbrance in the sum of $125,000 to be placed upon the premises for the use and benefit of defendants, for which plaintiff was to receive $5,000; nor is it true that plaintiff was to perform any services incidental to protecting the property from the foreclosure.

■ It is not true that plaintiff was the bidder at the foreclosure sale solely to take the same in trust for the use and benefit of defendants. It is not true that plaintiff violated any trust in causing the issuance to himself alone of the trustee's deed.

■ There was never any written agreement or written memorandum of any kind by and between plaintiff and defendants.

Numerous other findings, not germane here, disclose the full extent and detail of the evidence heard on the alleged dealings between Woods and Herson as alleged in the affirmative defense and first cause of action in the Woods complaint. Woods' complaint for specific performance to impose a trust and for damages states two causes of action which in substance are as follows:

The first cause of action alleges that, prior to the date of the trustee sale, Woods purchased the real property "under written contract of purchase through nominee through PETER LAWFORD." Prior to the trustee sale, Herson orally and partially in writing agreed he would sign for and act as guarantor upon the first trust deed loan commitment in the sum of $125,000 and pledge his credit therefor for a total fee and commission of $5,000, which Woods agreed to pay. Herson's sole interest was to earn the $5,000 with no right of possession or title. The arrangement was predicated upon the assumption that the then holder of the trust deed would not foreclose, pending completion of the sale with Lawford.

When the lender declined to delay the foreclosure, the agreement was modified and Herson was to procure the money and bid in the first trust deed on Woods' behalf, and then complete the refinancing previously agreed upon and hold the title for the use and benefit of Woods and Woods' nom-

inees. As additional consideration to the $5,000, Herson was to receive 10 percent interest on monies advanced.

Herson did in fact bid in the name of himself and another as trustee. but denied the agreement and claimed to be the true owner. Further he refused to negotiate with Lawford as agreed and sought to sell the property to Woods at a sum that would give him an additional profit of $20,000.

The second cause of action incorporated allegations of the first cause of action and alleged that, by reason of the aforesaid, and Herson's failure to negotiate with Lawford and allow the completion of the escrow and contract, Herson interfered with the contract and prevented its completion, and Lawford was threatening to sue for breach of contract and to attach the funds in escrow.

Based upon the allegations of the two causes of action Woods sought specific performance through execution of a deed conveying the property to them (first cause of action); and actual damages—to be determined—plus punitive damages of $1,000,000 (second cause of action).

## ARGUMENT

Woods' principal issue on appeal is that only findings 1, 2, 3, 4 and 6 were necessary to support the conclusion and judgment and the other findings determining title went beyond the jurisdiction of the trial court in the unlawful detainer action and therefore could not have been considered in the motion for summary judgment.

It is evident after a comparison of the affirmative defense in the unlawful detainer action and the first cause of action in the present case, that the parties, facts, and issues are the same and were litigated in the unlawful detainer action. Clearly this was not the customary unlawful detainer proceeding that is summary in nature. The trial lasted several days, and prior to the trial extensive depositions were taken by all parties.

The original statute establishing the unlawful detainer action, Code of Civil Procedure section 1161, concerned itself primarily with a typical landlord-tenant situation and was designed to give the landlord a summary method for evicting a tenant who was behind in his rent, or had breached a covenant of the lease. In 1929, Code of Civil Procedure section 1161a was adopted to permit a buyer of property at a sale in accordance with section 2924 of the Civil Code to also have the benefit of the unlawful detainer remedy. *Cheney* v. *Trauzettel,* 9 Cal.2d 158 [69 P.2d 832] delineated how far the unlawful detainer court could proceed in trying title in such an action if raised by the defendant. The court stated

at page 160, "Matters affecting the validity of the trust deed or primary obligation itself, or other basic defects in the plaintiff's title, are neither properly raised in this summary proceeding for possession, nor are they concluded by the judgment."

Concerning the question of res judicata, the court in *Gonzales* v. *Gem Properties, Inc.,* 37 Cal.App.3d 1029, on page 1035 [112 Cal.Rptr. 884] analyzed key cases touching on this problem as follows: "Since *Cheney,* the cases have held that, in an unlawful detainer proceeding, the court must make a limited inquiry into the basis of the plaintiff's title when acquired through proceedings described in Code of Civil Procedure section 1161a. (*Abrahamer* v. *Parks,* 141 Cal.App.2d 82 [296 P.2d 341]; *Kartheiser* v. *Superior Court,* 174 Cal.App.2d 617 [345 P.2d 135].) Some of the cases have determined that a municipal trial court has a duty to hear equitable defenses offered by the defendant. (*Altman* v. *McCollum,* 107 Cal.App.2d Supp. 847 [236 P.2d 914]; *Kessler* v. *Bridge,* 161 Cal. App.2d Supp. 837 [327 P.2d 241].) Pendency of another action concerning title has been held immaterial insofar as it might affect the unlawful detainer proceeding. (*Cruce* v. *Stein,* 146 Cal.App.2d 688 [304 P.2d 118].) The doctrine of res judicata has been applied by some courts to a subsequent action when it appeared that the defendant in the unlawful detainer suit had opportunity to litigate, or actually had litigated, in full his claim to title. (*Seidell* v. *Anglo-California Trust Co.,* 55 Cal.App.2d 913 [132 P.2d 12]; *Bliss* v. *Security-First Nat. Bank,* 81 Cal.App.2d 50 [183 P.2d 312]; *Freeze* v. *Salot,* 122 Cal.App.2d 561 [266 P.2d 140]. See also *High* v. *Cavanaugh,* 205 Cal.App.2d 495 [23 Cal.Rptr. 121].)

"More recent cases have tended to emphasize that the unlawful detainer defendant's affirmative equitable action is not barred by res judicata in a subsequent suit. It was stated in *Byrne* v. *Baker,* 221 Cal.App.2d 1, 7 [34 Cal.Rptr. 178], in affirming plaintiff's judgment in unlawful detainer, that 'Any claims of title that appellant [defendant] may have may be determined in the quiet title action now pending.' And, in *Patapoff* v. *Reliable Escrow Service Corp.,* 201 Cal.App.2d 484 [19 Cal.Rptr. 886], res judicata was not applied to bar a subsequent suit for damages, based upon fraud. Specific performance of a contract of sale was litigated in a subsequent suit in *Haase* v. *Lamia,* 229 Cal.App.2d 654 [40 Cal.Rptr. 518], and found not barred by an earlier favorable determination in the municipal court in favor of the then defendant.

"Thus, it appears that the problem of determining at what point the unlawful detainer proceeding has provided the means of litigating equitable attacks by the defendants therein on plaintiff's title has been resolved with varying results."

Of the cases cited, *High* v. *Cavanaugh, supra,* 205 Cal.App.2d 495, most parallels the case before this court. In March of 1957, High executed and delivered to Cavanaugh a deed to certain property. In October of the same year, High filed an action in the superior court at Pomona (now known as the East District of the Los Angeles Superior Court) seeking cancellation of the instrument and for a declaratory judgment determining the rights of the parties under an agreement pertaining to such conveyance. In 1958, Cavanaugh filed an unlawful detainer action to obtain possession of the premises deeded to him by High in municipal court. An answer to the complaint, including an affirmative defense by way of abatement, was filed by High; she also filed a cross-complaint in the municipal court action seeking substantially the same relief theretofore sought in the action filed in Pomona. To this cross-complaint an answer was filed by Cavanaugh. The equitable relief sought by High was beyond the jurisdiction of the municipal court and the cause was transferred to the superior court in Pasadena. The judgment was in favor of Cavanaugh. Cavanaugh moved to have High's lawsuit in Pomona dismissed upon the ground that the issues presented were res judicata. The court agreed and dismissed the action. On appeal High made the same argument that Woods urge here, to wit: that the issue of the title was not properly triable in the unlawful detainer proceeding, thus any finding involving title is not res judicata. The court disagreed, stating on page 498: "Normally, of course, neither a cross-complaint nor a counterclaim is permissible in an unlawful detainer action, the reason being that the governing legislation 'was intended to provide a summary remedy for the restitution of the possession of premises withheld by tenants in violation of the covenants of their lease, which remedy would be frustrated and rendered wholly inadequate by the interposition of defenses usually permitted in ordinary cases at law.' (*Knight* v. *Black,* 19 Cal.App. 518, 527, 528 [126 P. 512].) Hence it is the rule that in such summary proceeding the broad question of title cannot be raised and litigated by cross-complaint or affirmative defense. (*Cheney* v. *Trauzettel,* 9 Cal.2d 158, 159 [69 P.2d 832].)

"As is so often the case, however, the rule does not appear to be an absolute one and is subject to exceptions in the light of attending circumstances. One such circumstance considered in the decisions is the absence of any motion to strike the pleading or the failure to object to the admission of evidence thereon. In *Garfinkle* v. *Montgomery,* 113 Cal. App.2d 149 [248 P.2d 52], trial of the cross-complaint interposed by the lessees went to a nonsuit without objection and the court deemed 'the appellants' contention in regard thereto properly before us on this appeal'

(p. 155), although taking note of the fact that such a pleading is normally not permissible in an unlawful detainer action."

The reasoning of *High* v. *Cavanaugh* is convincing and extremely appropriate here. It was Woods who pleaded the affirmative defense in the unlawful detainer action that raised the same issues pleaded in the subsequent specific performance action. Herson was obviously willing to have the unlawful detainer action tried on all of the issues raised by Woods. As mentioned earlier it was a lengthy, detailed trial, including complete pretrial discovery. Woods, having lost, now want a second chance. Woods cite *Gonzales* v. *Gem Properties, Inc., supra,* 37 Cal.App. 3d 1029, in support of their position. Their reliance is misplaced. The court said at page 1033, "The crucial issue in the case before us is whether plaintiff did have a 'fair adversary hearing' in the municipal court, one that resulted in a judgment on the merits of his case, precluding his subsequent suit." The court then concluded that the record before it did not establish that plaintiff received a full adversary hearing on all the issues involved in his subsequent suit. *Gonzales* aids Herson and lends considerable weight to our conclusion in this case by indicating a party *can* have a full adversary hearing in an unlawful detainer action where all issues involved in a subsequent proceeding are determined.

■ The rationale of the res judicata doctrine is well known. It seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration.* (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 147, p. 3292.)

■ This rationale explains the reason for applying the doctrine to this case. Clearly there will be no miscarriage of justice—Woods have had their day in court and because their first cause of action is identical to their affirmative defense, the trial court properly applied the doctrine of res judicata in granting the summary judgment on said cause of action.

■ In *Saunders* v. *New Capital for Small Businesses, Inc.,* 231 Cal.App. 2d 324 on pages 330-331 [41 Cal.Rptr. 703], the court summarized the essential principles of the doctrine: " 'The doctrine of res judicata rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent. Public policy and the interest of litigants alike require that there be an end to litigation. In applying the doctrine the cases recognize a distinction between the effect of a judgment operating by way of *estoppel* in a later action upon a *different* cause of action and one oper-

ating by way of *bar* against a second action upon the *same* cause of action. (Citations.)' . . .

"Thus the doctrine of res judicata has a double aspect. ██ Under the doctrine considered in its secondary aspect as a collateral estoppel '[a] former judgment operates . . . in a later action upon a different claim or cause of action, . . . as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action.' [Citations.] It is settled that in such instances 'the prior determination of an issue is conclusive in a subsequent suit between the same parties as to that issue and every matter which might have been urged to sustain or defeat its determination.' [Citations.]"[2]

██ The first action was in unlawful detainer while this action is for specific performance, thus the doctrine of res judicata was applied by the trial court in its secondary aspect. Woods concede that res judicata is a defense that may properly be raised by a motion for summary judgment.

Woods' second cause of action also fails when the secondary aspect of the res judicata doctrine is applied. The gravamen of the action is that Woods and Lawford had a written contract that would permit Woods to purchase the real property; that Herson knew of this agreement and was to negotiate with Lawford to reduce the purchase price after the foreclosure sale;[3] and that Herson, in fact, interfered with the contract between Woods and Lawford by failing and refusing to negotiate with Lawford thus preventing the sale. The prayer seeks special damages according to proof and exemplary damages of $1,000,000. This cause of action is dependent on a finding of a contract between Woods and Herson. It is the same agreement in fact that they rely on in their first cause of action to establish equitable ownership in themselves. The court could not separate the alleged agreement into two parts and find that Herson

[2]Code of Civil Procedure section 1908 provides in relevant part: "The effect of a judgment or final order in an action or special proceeding before a Court or Judge of this State, or of the United States, having jurisdiction to pronounce the judgment or order, is as follows: . . . 2. In other cases, the judgment or order is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing under the same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action or proceeding."

[3]This is very difficult to understand because normally the trustor (Lawford) has no interest of any kind remaining after a foreclosure sale under Civil Code section 2924, thus is in no position to negotiate. However, we do not speculate on the alleged arrangements and make our determination on the pleadings before us.

did not violate the agreement to purchase the property for Woods at the foreclosure sale, but *did* violate the agreement to negotiate with Lawford *after* the sale. Unless he bought the property for Woods, there would be no reason to negotiate with Lawford. Thus the key issue—the existence of a contract between the parties—had to be tried in the unlawful detainer action. The trial court found in its findings that Herson was not bidding at the foreclosure sale on behalf of Woods and it was not true that Herson was to perform any services incidental to protecting the property from foreclosure. In *Price* v. *Sixth District Agricultural Assn.,* 201 Cal. 502 at page 510 [258 P. 387], the court in discussing the res judicata doctrine states, " '. . . a former adjudication may be used for two different purposes, namely, either as a complete bar to the relitigation of the same cause of action, *or as conclusive evidence of some fact or issue common to different causes of action.*' " (Italics added.)

There were no triable issues as a matter of law raised by the first and second causes of action, as the same were determined in the unlawful detainer action; therefore, application of the doctrine of res judicata and collateral estoppel were properly applied by the trial court in granting the summary judgment.

■ Woods filed a notice of appeal in the unlawful detainer action on February 19, 1971. Pursuant to rule 5(c) of California Rules of Court, Woods were informed by the superior court clerk of the amount of fee required for preparation of the clerk's transcript on March 24, 1971. Woods did not pay the fee, and took no further action to pursue the appeal; however, no dismissal of the appeal has been entered. Under California law the pendency of an appeal from a judgment prevents its operation as res judicata (*Caminetti* v. *Guaranty Union Life Ins. Co.,* 22 Cal.2d 759, 766 [141 P.2d 423]; *Myers* v. *Washington,* 211 Cal.App. 2d 767, 772 [27 Cal.Rptr. 778]; *Robinson* v. *El Centro Grain Co.,* 133 Cal.App. 567, 573 [24 P.2d 554]), and an appeal is pending until decided or dismissed, unless the judgment is sooner satisfied. (Code Civ. Proc., § 1049.)

Since Woods' appeal in their unlawful detainer action has not yet been decided or dismissed, there has been no final determination of the action upon appeal, and the action is therefore still pending. Nevertheless, we would not be warranted in reversing the present action on the basis that the judgment in the former action could not become res judicata on the issues in the present case where it clearly appears that the effect thereof would be to accomplish injustice. The record shows that the former action is only technically "pending" inasmuch as the appeal has apparently been

abandoned· by Woods. In addition the issue of whether the pendency of the former action prevents the judgment from becoming res judicata on the issues of the case is not raised by Woods in this appeal. All that is lacking to determine the former action is an order of this court dismissing the appeal. This court has the power to so dismiss the appeal on its own motion, and there would not be error in our so doing. (Rule 10(a), Cal. Rules of Court.) The effect of such an order would be to finally end the former action. It is well settled that a dismissal or discontinuance of a former action at any time before the trial of a subsequent action, or even before the conclusion of such trial, completely removes the objection that a former action is still pending and the judgment would thereby become a conclusive determination of the rights of the parties. (See *Collins* v. *Ramish,* 182 Cal. 360, 366-368 [188 P. 550].) Therefore, were we to reverse the summary judgment in the instant action and dismiss the pending appeal in the former action, a later motion for summary judgment, if made, would necessarily have to be granted for the reasons set forth herein. To allow a reversal on such a technicality would promote a gross injustice and unnecessarily lengthen the litigation between the parties.

The judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied July 2, 1974.