Filed 8/4/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ALFONSO AYALA,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>RANDY DAWSON,<br><br>     Defendant and Respondent. | A142830<br><br>(Solano County<br>Super. Ct. No. FCS040044) |

After living for more than a dozen years in a residential unit he claimed he owned, Alfonso Ayala was evicted by the property owner, Randy Dawson, in an unlawful detainer action. Ayala defended by attempting to quash service of summons on the ground he was not a tenant, but instead held equitable title under an oral installment sale contract for the purchase of property. Dawson countered that, in fact, Ayala was a tenant under a written lease, and had breached the lease in various ways, thus justifying his eviction. After an evidentiary hearing on Ayala's motion to quash service, Dawson prevailed and ultimately took a default judgment. Ayala then vacated the premises.

In this case, a separate, concurrent action by Ayala against Dawson for fraud and various other claims, Ayala once again pursues the theory that he holds equitable title under an installment sale contract. He seeks to argue, as he did in the unlawful detainer action, that Dawson, a real estate broker, deceived him into signing the lease, while misrepresenting that the document was simply the memorialization of a preexisting oral contract of sale. The court granted summary judgment for Dawson, ruling that, under the doctrine of collateral estoppel, Ayala is barred from relitigating his fraud-in-the-inducement theory. This appeal is from the ensuing judgment and from an award of

1

attorney fees in Dawson's favor under the prevailing party fee clause in the lease. We affirm.

## I.  BACKGROUND

In late 1999, Ayala found a five-unit residential property in Vacaville that he wished to buy, but he could not qualify for a mortgage loan, so he sought the assistance of his friend Dawson, a real estate broker. According to Ayala, the two men struck an oral agreement under which Dawson agreed to obtain the required purchase money mortgage loan and buy the property in Dawson's name for a price of $330,000; Ayala agreed to pay the entire down payment of 20 percent and thereafter pay Dawson a $200 per month fee, plus the monthly principal and interest on the mortgage loan; Ayala agreed to maintain the property and not to commit waste; Ayala agreed to contract with a property management company to manage the rental units; and, upon Ayala's payoff of the entire principal and interest due on the mortgage, Dawson agreed to deed the property to Ayala in fee.

The parties executed a written contract provided by Dawson on December 9, 1999, which Ayala—in reliance on Dawson's superior knowledge of real estate transactions—claims he understood merely to confirm an installment contract for the purchase of property on terms the two men had previously discussed. After signing and initialing the papers, Ayala moved into one of the units and contends he spent hundreds of thousands of dollars improving the property over the more than 12 years he lived there. Ayala used a "shop" on the property in his business and may have stored equipment in a "barn" on the property. From January 2000 to 2008, he also paid Dawson $2,700 per month, and from 2008 to July 2012, he paid Dawson $2,900 per month. Payments to Dawson apparently were made by the property management company, which used rental income from the property, supplemented by funds provided by Ayala. Unbeknownst to Ayala—who testified he did not read the "pile of documents" presented to him in December 1999—the contract he executed was a "RESIDENTIAL LEASE WITH OPTION TO PURCHASE (CALIFORNIA SHORT FORM)," not an installment sale contract. According to Dawson, Ayala allowed the purchase option granted under this lease to

2

expire on December 31, 2004, and thereafter Ayala's interest in the property amounted to nothing more than a month-to-month tenancy. As evidence that both parties understood their relationship that way, Dawson points out he raised what he explicitly denominated as the monthly "rent" from $2,700 per month to $2,900 per month in 2008, without protest of any kind by Ayala.

Despite the fact that the option to purchase had expired, in 2011 Dawson offered to sell the property to Ayala for the original price of $330,000, with a credit for the down payment he had paid. Ayala refused the offer, taking the position he should not have to buy property he already owned. By then, according to Dawson, Ayala had fallen into a pattern of late payment of his monthly rent and had allowed the property to fall into a state of disrepair. As a result, Dawson claimed, he was unable to obtain refinancing, which put him in a financial bind because he was in a "negative cash flow" position.[1] According to Dawson, the whole idea for the transaction had been to provide, in effect, temporary financing so that Ayala could purchase the property no later than December 31, 2004, but that never happened, and after a decade, the continued carrying costs were damaging Dawson's credit. Dawson testified that when he tried to raise these concerns with Ayala in August 2011, Ayala for the first time began trying to claim that he was not a tenant, that he held equitable title to the property under an oral installment sale contract, and that the written lease was fraudulent.

In June 2012, Ayala filed this action, a lawsuit alleging claims against Dawson for fraud, breach of an oral contract, specific performance, preliminary and permanent injunctive relief, and declaratory relief. He later amended the complaint to add claims seeking a quiet title declaration, restitution for unjust enrichment, and the imposition of a constructive trust and a resulting trust. In July 2012, Dawson filed an action of his own

---

[1] Apparently, the debt service on Dawson's original loan had gone up because, in 2003, he initially refinanced the property, converting from a 30-year term loan to a 15-year term loan. His unsuccessful effort to refinance in 2011 appears to have been an effort to lower the debt service cost on the 15-year loan.

for unlawful detainer.[2]  Rather than answer, Ayala filed a motion to quash service of summons on the ground that the court in which the unlawful detainer action was filed lacked jurisdiction because "[t]here was never a landlord-tenant relationship between the parties."  In support of that jurisdictional argument, Ayala contended the written lease was fraudulent and Ayala occupied the property not as a tenant, but as a vendee-in-possession pursuant to an oral installment sale contract.

After holding a one and a half day evidentiary hearing in the unlawful detainer action, Judge D. Scott Daniels denied the motion to quash, ruling that "[b]ased on Plaintiff's . . . Residential Lease with Option to Purchase and the conduct of the parties, [Dawson had] met his burden of proof to establish the existence of a landlord-tenant relationship . . . ."  In denying the motion, Judge Daniels found that Ayala had read and signed the lease, declined to find any basis to relieve Ayala of his contractual obligations, and specifically rejected the theory that Dawson served as Ayala's real estate broker or was Ayala's trusted real estate advisor.

Ayala sought a writ of mandate in the superior court appellate division, requesting review of Judge Daniels's ruling.  The appellate division panel denied the writ, specifically affirming Judge Daniels's finding of a landlord-tenant relationship as supported by substantial evidence.  The panel also found no merit to a contention from Ayala that he had been deprived of due process because of the expedited handling of the hearing on his motion to quash.  In addressing the due process issue, the writ panel stated "[t]he sole issue in the unlawful detainer action is possession and the arguments that [Ayala] wished to raise concerning 'fraud, constructive trust, estoppel, breach of fiduciary duties and many integrally related factual matters' will be exhaustively decided in the separate unlimited civil action [he has] filed," referring to this action.

---

[2] On May 21, 2015, Ayala filed a motion requesting that we take judicial notice of various pleadings filed in the unlawful detainer action under Evidence Code sections 451, 452 and 459 and California Rules of Court, rule 8.252.  We grant the motion.

4

After affirmance of the denial of the motion to quash in Dawson's unlawful detainer action and entry of judgment in that action by default,[3] Ayala continued to pursue this action against Dawson. Discovery remained open in the case for nearly two years. In February 2014, Dawson filed a motion for summary judgment, arguing, among other things, that Judge Daniels's rejection of Ayala's fraud theory in the unlawful detainer action collaterally estops Ayala from pursuing the same theory in this action. Judge Daniels's ruling, once it became final after Ayala exhausted his efforts to seek review, Dawson argued, is dispositive on every one of the claims asserted in this case. In opposition, Ayala argued once again that he had not been given enough time to prepare for the hearing on the motion to quash or for meaningful discovery, but his opposition papers identified no witnesses who had not testified before Judge Daniels in the unlawful detainer action and presented no documents that had not been considered by Judge Daniels.

Judge Scott Kays granted Dawson's motion for summary judgment in May 2014. He found that "[Dawson] has shown that [Ayala] is unable to establish an essential element of any of [his] causes of action because [he] is precluded from relitigating the validity and enforceability of the parties' written lease agreement"; that "[a]ll of [Ayala's] causes of action are based on [his] allegations that [Dawson] improperly memorialized the parties' oral agreement for an installment sales contract as a lease agreement with an option to purchase . . . [which Dawson] fraudulently induced [Ayala] to execute . . . by misrepresenting the contents of the agreement . . ."; and that "the same parties have already fully litigated the validity and enforceability of the lease agreement in a prior unlawful detainer action."

Judgment pursuant to the order granting summary judgment was entered June 11, 2014. An attorney fees award for $27,000 in favor of Dawson under a

_____

[3] Ayala filed a notice of appeal from the judgment against him in the unlawful detainer action, but ultimately abandoned that appeal.

5

prevailing party fee clause in the lease issued later, on July 31, 2014.  Ayala timely appealed both from the judgment and the attorney fees award.

## II.    DISCUSSION

### A.    Standard of Review and General Principles of Res Judicata

The central issue here is whether the claims Ayala seeks to bring in this action are barred under principles of res judicata by the denial of his motion to quash in Dawson's unlawful detainer action.  Except for evidence as to which objections have been made and sustained, we take as true the facts shown by the evidence presented in opposition to a summary judgment motion, reviewing the grant of summary judgment de novo.  (*In re Automobile Antitrust Cases I and II* (2016) 1 Cal.App.5th 127, 150–151.)  "The defense of res judicata not only is properly raised by a motion for summary judgment, but also is a proper ground upon which to grant a summary judgment."  (*Rohrbasser v. Lederer* (1986) 179 Cal.App.3d 290, 296 (*Rohrbasser*).)  "Whether the doctrine of res judicata applies in a particular case is a question of law which we review de novo."  (*City of Oakland v. Oakland Police and Fire Retirement System* (2014) 224 Cal.App.4th 210, 228 (*City of Oakland*).)

Before turning to the merits, we begin with a brief overview of res judicata.  "The tenets of res judicata prescribe the preclusive effect of a prior final judgment on the merits . . . .  Application of the doctrine of res judicata 'is intended to preserve the integrity of the judicial system, promote judicial economy, and protect litigants from harassment by vexatious litigation.'  [Citation.]  It 'rests upon the sound policy of limiting litigation by preventing a party who has had one fair adversary hearing on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination.' "  (*City of Oakland*, *supra*, 224 Cal.App.4th 210, 227–228; accord, *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896–897; *In re Crow* (1971) 4 Cal.3d 613, 622–623.)  "The doctrine has two distinct aspects:  claim preclusion and issue preclusion.  [Citation.]  Claim preclusion, often referred to as res judicata, provides that 'a valid, final judgment on the merits precludes parties or their privies from relitigating the same "cause of action" in a subsequent suit.' "  (*City of Oakland*, at

6

p. 227; see *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823–825 (*DKN Holdings*) [pointing out the terminological confusion that arises from imprecise use of the umbrella term res judicata and explaining the differences between claim preclusion and issue preclusion].)

This case involves the second branch of res judicata, which is known interchangeably as issue preclusion and collateral estoppel. Collateral estoppel "precludes relitigation of *issues* argued and decided in prior proceedings." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 (*Lucido*), italics added; see *DKN Holdings*, *supra,* 61 Cal.4th at p. 824; *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828–829 (*Vandenberg*).) "Traditionally, [courts] have applied the doctrine [of collateral estoppel] only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citations.] The party asserting collateral estoppel bears the burden of establishing these requirements." (*Lucido*, at p. 341.)[4]

---

[4] "Besides the classic five criteria for applicability, '[t]here is an equitable component to collateral estoppel' as well. (*Direct Shopping Network*[*, LLC v. James* (2012) 206 Cal.App.4th 1551,] 1562.) ' "[E]ven where the technical requirements are all met, the doctrine is to be applied 'only where such application comports with fairness and sound public policy.' " ' (*Ibid*., quoting *Smith v. Exxon Mobil Oil Corp.* [(2007) 153 Cal.App.4th 1407,] 1414.)" (*Union Pacific Railroad Co. v. Santa Fe Pacific Pipelines, Inc.* (2014) 231 Cal.App.4th 134, 185.) Thus, courts have crafted policy-based exceptions to collateral estoppel in some circumstances. (See *Smith*, at p. 1415 [applying "collateral estoppel in this case is unfair and bad policy . . . because of [an] inability at the prior adjudication to obtain expert testimony"]; *Wright v. Ripley* (1998) 65 Cal.App.4th 1189, 1193–1196 [civil litigation process would "grind to a halt" if orders on motions for sanctions were given collateral estoppel effect because of the incentive lawyers would have to litigate such proceedings exhaustively when faced with the prospect of binding consequences in other proceedings].) Ayala does not invoke any such exception, nor do we perceive a basis for one.

It is often said that collateral estoppel "is not an easy rule to apply, for the term 'issue' as used in this connection is difficult to define, and the pleadings and proof in each case must be carefully scrutinized to determine whether a particular issue was raised even though some legal theory, argument or 'matter' relating to the issue was not expressly mentioned or asserted." (*Clark v. Lesher* (1956) 46 Cal.2d 874, 880–881 (*Clark*).) The identical issue requirement "addresses whether 'identical factual allegations' are at stake in the two proceedings." (*Lucido*, *supra*, 51 Cal.3d at p. 342.) "[I]n determining whether the identity [of issues] requirement is satisfied, courts must be mindful of the need to distinguish 'issues' from 'legal theories.' " (*Wimsatt v. Beverly Hills Weight etc. International, Inc.* (1995) 32 Cal.App.4th 1511, 1517 (*Wimsatt*); *Evans v. Celotex Corp.* (1987) 194 Cal.App.3d 741, 746 ["Collateral estoppel bars relitigation of the same issues; it does not require identity of legal theories or causes of action."].)

## B. The Collateral Estoppel Effect of Unlawful Detainer Judgments

Because "[a]n unlawful detainer action is a summary proceeding ordinarily limited to resolution of the question of possession[,] . . . any judgment arising therefrom generally is given limited res judicata effect." (*Malkoskie v. Option One Mortgage Corp.* (2010) 188 Cal.App.4th 968, 973 (*Malkoskie*).) The approach courts take to applying collateral estoppel in this setting is broadly consistent with that taken to the collateral estoppel effect given other forms of summary, informal or specialized adjudication.[5] As a general matter in such cases, collateral estoppel will only apply if the party to be bound agreed expressly or impliedly to submit an issue to prior adjudication (see *Vandenberg*, *supra*, 21 Cal.4th at p. 835) and had a full and fair opportunity to litigate (see *Rohrbasser*,

---

[5] See, e.g., *Rohrbasser*, *supra*, 179 Cal.App.3d at page 300 (prior findings based solely on affidavits in denial of motion to vacate default and to set aside default judgment); *Kelly v. Vons Companies, Inc.* (1998) 67 Cal.App.4th 1329, 1335–1337 (prior findings in labor arbitration); *Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 869 (prior findings in administrative adjudication); *Basurto v. Imperial Irrigation District* (2012) 211 Cal.App.4th 866, 877–878 (*Basurto*) (prior findings in employer's prior internal grievance procedure).

*supra*, 179 Cal.App.3d at p. 300) under circumstances affording due process protections (see *Basurto*, *supra*, 211 Cal.App.4th at p. 878).

In the specific context we have here, the two leading cases illustrating the collateral estoppel effect of unlawful detainer judgments are *Wood v. Herson* (1974) 39 Cal.App.3d 737 (*Wood*) and *Vella v. Hudgins* (1977) 20 Cal.3d 251 (*Vella*). In *Wood*, the defendant (Herson) arranged to obtain a mortgage loan and purchase property allegedly on behalf of a couple who could not qualify for the mortgage (the Woods, one of whom was in bankruptcy). (*Wood*, at pp. 740–742.) A dispute arose over whether Herson held title and was the true property owner, or, as alleged by the Woods, held title in trust for them and had no right to possession. (*Ibid.*) Herson brought an unlawful detainer action, and the Woods defended by arguing fraud and claiming that, for a fee, Herson had agreed orally to purchase the property on their behalf and then transfer title to them, but reneged. (*Ibid.*) They presented this theory through an affirmative defense of fraud. (*Ibid.*) Herson prevailed, and in a subsequent suit by the Woods for specific performance predicated on the same theory, the trial court granted summary judgment against them, applying the doctrine of collateral estoppel. (*Id.* at p. 739.) On review, the Court of Appeal affirmed. (*Id.* at pp. 747–748.)

The *Wood* court's reasoning, as later described by the California Supreme Court in *Vella*, was as follows. "Noting that the Woods' affirmative defense of fraud in the unlawful detainer action was virtually identical to the fraud allegations upon which their suit for specific performance was based, the court concluded that even though title 'normally is not a permissible issue in an unlawful detainer action,' the essential issues had been fully and fairly disposed of in the earlier proceeding. [Citation.] The court cited in support of its ruling such varied factors as the length of the 'summary' unlawful detainer hearing (seven days), the scope of discovery by the parties ('extensive' and 'complete'), the quality of the evidence ('detailed'), and the general character of the action ('[clearly] . . . not the customary unlawful detainer proceeding'). [Citation.] A lengthy and comprehensive superior court record replete with precise findings of fact persuaded the *Wood* court that application of collateral estoppel to curtail further

9

litigation would involve 'no miscarriage of justice—(the) Woods have had their day in court . . . .' " (*Vella*, *supra*, 20 Cal.3d at p. 256, quoting *Wood*, *supra*, 39 Cal.App.3d at pp. 740, 742, 745.)[6]

The Supreme Court adopted the same frame of analysis but reached the opposite conclusion on the facts in *Vella*, a case in which a property owner in an eviction action tried to block subsequent litigation against him by the evicted tenant based on the unlawful detainer judgment he obtained. There, the plaintiff, Nancy Vella, alleged she had a long-term "confidential" and "intimate" relationship with the defendant, Everett Hudgins. (*Vella*, *supra*, 20 Cal.3d at p. 253.) When Vella had trouble paying a note on a second deed of trust on her home, Hudgins purchased the note, told Vella he was doing so to protect her from default, and assured her she need not worry about making payments on the obligation. (*Id*. at p. 254.) The two then quarreled; Hudgins directed the deed of trust trustee to give notice of default; and in an ensuing unlawful detainer proceeding by Hudgins against Vella, Vella pleaded fraud as an affirmative defense, but ultimately lost and was evicted. (*Ibid.*) Nonetheless, she managed to persuade the trial court to allow her to litigate a fraud claim against Hudgins in a subsequent action, and she prevailed in a jury trial. (*Ibid.*) On appeal, the Supreme Court rejected Hudgins's contention that Vella's separate fraud action was barred by res judicata. (*Ibid.*)

The Supreme Court distinguished *Wood*, describing it as an "uncommon" situation in which the parties to an unlawful detainer action had fully and extensively litigated issues beyond simple possession. (*Vella*, *supra*, 20 Cal.3d at p. 257.) The court acknowledged the *Wood* holding that " 'full and fair' litigation of an affirmative defense—even one not ordinarily cognizable in unlawful detainer, if it is raised without objection, and if a fair opportunity to litigate is provided—will result in a judgment conclusive upon issues material to that defense" (*Vella*, at pp. 256–257), but explained

---

[6] See also *Gombiner v. Swartz* (2008) 167 Cal.App.4th 1365, 1371 (ruling in unlawful detainer proceeding that rent stabilization ordinance applied, thus justifying withholding of rent as an offset against past overpayment of excess rent, given collateral estoppel effect in breach of lease case by landlord for nonpayment of rent).

that the facts presented in *Vella* were more typical of a summary unlawful detainer proceeding than the situation presented in *Wood*. "The record offered in support of the plea of res judicata is virtually barren. Evidently the unlawful detainer proceedings were unrecorded or untranscribed, for no transcript of the municipal court hearing exists, and no findings of fact or conclusions of law were made, other than a notation in the trial judge's minute order to the effect that Vella had not proved her affirmative defenses of 'waiver and [equitable] estoppel and tender.' The sparse record presented to us fails to show either the precise nature of the factual issues litigated, or the depth of the court's inquiry. We decline to assume, given the summary character of this type of action, that the mere pleading of a defense without objection by the adverse party necessarily demonstrates adequate opportunity to litigate the defense. The fact that in the unlawful detainer action both parties submitted trial-length estimates of two hours, whereas trial of the second action consumed four days, while not controlling, does create a strong inference that the former proceeding was a conventional unlawful detainer action, unlike the elaborate and highly atypical proceeding considered in *Wood*." (*Vella*, at p. 258.)[7]

### C.     Application of Collateral Estoppel in this Case

This case, in our view, is more akin to *Wood* than to *Vella*. Ayala could have moved to consolidate the unlawful detainer proceeding with this action, thus requiring the court to determine whether the issues presented were so complex and so intertwined with the issue of title that " 'the entire case [should be] treated as an ordinary civil action, not as a summary proceeding' " (*Martin-Bragg v. Moore* (2013) 219 Cal.App.4th 367, 387), but he did not do so. Instead, he "acceded to the summary and expedited procedures of unlawful detainer with respect to" his claim to equitable title. (*Id*. at p. 389.) By

---

[7] See also *Gonzales v. Gem Properties, Inc.* (1974) 37 Cal.App.3d 1029, 1032, 1036 (unlawful detainer judgment against homeowner who suffered foreclosure and was evicted by holder of second mortgage does not bar later action against note holder and those who acted in concert with him, individuals who "were widely known in their trade as persons willing to employ tricks and devices to acquire property for amounts below its actual value," based on alleged scheme to acquire title fraudulently by manipulation of trustee sale).

11

recharacterizing the governing contract as an oral installment sale contract for the purchase of land, rather than a lease, Ayala hoped to persuade Judge Daniels he was not a tenant subject to eviction.

The premise of Ayala's attack on jurisdiction in the unlawful detainer proceeding was that Dawson, in breach of his fiduciary duty as a real estate broker, duped Ayala into signing the lease, while misrepresenting it to be an installment sale contract. Judge Daniels considered this issue after holding an evidentiary hearing that ran six and a half courtroom hours, taking testimony from both parties, and admitting extensive documentary evidence. In the end, he specifically rejected the notion that Dawson was Ayala's real estate broker or that Ayala should be excused from performance under the lease for lack of awareness of its terms.

In reviewing the later decision by Judge Kays to give Judge Daniels's rejection of Ayala's fraud-in-the-inducement argument collateral estoppel effect, we determine what was "actually litigated" by looking to the pleadings and the proof. (*Clark*, *supra*, 46 Cal.2d at pp. 880–881.) "An issue is actually litigated '[w]hen [it] is *properly raised*, by the pleadings or otherwise, and is submitted for determination, and is *determined* . . . .' " (*People v. Sims* (1982) 32 Cal.3d 468, 484, original italics, superseded by statute on other grounds as noted in *Gikas v. Zolin* (1993) 6 Cal.4th 841, 851.)

There was far more here than what the Supreme Court characterized in *Vella* as the "mere pleading of a defense without objection . . . ." (*Vella*, *supra*, 20 Cal.3d at p. 258.) The record in the unlawful detainer proceeding is clear that Ayala elected to place his fraud theory in issue by moving to quash on the ground there was no valid lease; that he framed the issue by persuading Judge Daniels to take judicial notice of his verified allegations of fraud in this case; that this fraud allegation was the central focus of an evidentiary contest in a long-cause hearing at which both Ayala and Dawson testified; that Ayala's presentation at the hearing was fulsome and unrestricted; and that Judge Daniels ultimately decided the fraud issue against him.

Prior to the hearing on the motion to quash, Ayala was given the opportunity to take discovery, and he in fact took Dawson's deposition, which he then used extensively,

12

but ultimately to no effect, in cross-examining Dawson at the hearing. Unlike the situation in *Vella*, there was an extensive record, consisting of a 243-page transcript and 21 documentary exhibits, among them the written lease signed by Dawson and Ayala, the ledger of rent payments made by Ayala, and the amortization and payment records for Dawson's mortgage loans on the property. Also included is Judge Daniels's on-the-record explanation of his findings. Judge Daniels found, much as the trial judge in the *Wood* case did, that this was an unusual case. "[M]y goodness," he stated before announcing his findings, "this is certainly not a typical transaction." After observing that the transaction seemed designed to be a means of financing for Ayala—which is what Dawson had argued, and is what a lease-purchase option accomplishes, where the option is exercised—he proceeded to characterize the parties' relationship legally as one of landlord-tenant. Ayala had the right to seek review of that determination, and availed himself of this right by pursuing a petition for a writ of mandate in the superior court appellate division, without success.[8]

---

[8] The appellate division issued a reasoned order denying the petition after undertaking a thorough review of the record, concluding as follows: "It is evident from the trial court's recitation of reasons for its decision that the decision is supported by substantial, if not overwhelming, evidence. [¶] Petitioner admitted that he executed a written lease agreement that gave him an option to purchase the property . . . . The agreement was clearly labeled 'RESIDENTIAL LEASE WITH OPTION TO PURCHASE (CALIFORNIA SHORT FORM)', established that Petitioner would pay monthly rent of $2,700, indicated that Petitioner would pay nonrefundable option consideration of $77,000, and specifically provided that Petitioner could make any legally conforming use of the property, that Petitioner was solely responsible for maintenance of the property, and that Petitioner was free to sublease without Respondent's consent . . . . Each page was initialed, confirming that Petitioner had read the page, and Petitioner's signature established that Petitioner had 'thoroughly read and approved' every provision of the agreement . . . . [¶] Notwithstanding Petitioner's claims that his primary language was Spanish and that he did not actually read the document prior to initialing and signing it, his own testimony established that he was familiar with legal requirements for written contracts as part of his occupation as a licensed contractor, and that he attended and graduated from high school in the United States . . . . [¶] The terms of the agreement, no matter what Petitioner may or may not have believed, were consistent with the terms orally discussed between the parties. Respondent would purchase the property in Respondent's name . . . . Petitioner would

13

In his writ petition, Ayala argued, as he does here, that Judge Daniels decided only the issue of possession and that the separate and distinct issue of title is not germane in an unlawful detainer proceeding. In the typical case, that is true. But what the argument overlooks is the necessary *factual* predicate for Judge Daniels's ultimate conclusions—he found that Dawson carried his burden of proof on the question of jurisdiction, that there was an enforceable written lease agreement, and thus, impliedly, that Dawson did not commit fraud—fundamentally undercuts Ayala's claim to equitable title. Indeed, this is exactly what the trial judge in *Wood*, *supra*, 39 Cal.App.3d 737 found, where a couple who could not qualify for a loan used a front buyer and then failed when they tried to argue that the strawman financier they relied upon was not the true owner. Just as that couple was barred from litigating such a defense twice, Ayala was barred here. Judge Kays was correct to so rule.

In a final attempt to avoid the collateral estoppel effect of Judge Daniels's adverse ruling against him in the unlawful detainer proceeding, Ayala advances two additional arguments. He contends, first, that because the final order in the unlawful detainer proceeding was a "clerk's judgment" of default, there was no decision on the merits, and, second, even if there was a decision on the merits, because the appellate division panel expressly stated in denying his writ petition that the unlawful detainer proceeding was strictly limited to the issue of possession, the denial of the writ deprives Judge Daniels's findings of any collateral estoppel effect here under the "law of the case" doctrine. We see no merit in either point.

Ayala appeared specially in the unlawful detainer proceeding, contested the issue of jurisdiction—tendering his fraud-in-the-inducement theory as the linchpin issue—was

provide the down payment necessary to purchase the property . . . . Petitioner would pay Respondent an amount equivalent to the monthly mortgage, interest, insurance and taxes owed on the property plus $200 . . . . The only real dispute is whether the agreement was to be structured as a lease with an option to purchase or an installment land sales agreement, an issue that was never orally discussed prior to the execution of the lease agreement." (Denial of Petition for Writ of Mandate, November 6, 2012, Writ No. FCS 040463 at pp. 3–4, record citations omitted.)

given an evidentiary hearing, and lost on the merits. He does not and cannot argue that Judge Daniels's order was somehow tentative, subject to change, or never reached a point of finality. For purposes of res judicata, it is deemed to be part of the judgment. (*McClain v. Rush* (1989) 216 Cal.App.3d 18, 28 ["for purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect"], quoting Rest.2d Judgments, § 13, italics omitted.) As to Ayala's "law of the case" argument, we do not view the appellate division's observation that the unlawful detainer proceeding was strictly limited to the issue of possession as having any bearing here. The passage from its opinion that Ayala relies upon addresses due process, which is relevant to collateral estoppel but is not the same thing. And in any event, even if the appellate division panel had intended to address the collateral estoppel effect of Judge Daniels's order, its determination on the point is ultimately no more binding on us than a finding by Judge Daniels on the collateral estoppel effect of his own order. (See *Velasquez v. Superior Court* (2014) 227 Cal.App.4th 1471, 1477, fn. 7 ["Appellate division decisions have persuasive value, but they are of debatable strength as precedents and are not binding on higher reviewing courts."].)

### D. Appeal of the Attorney Fees Award

Ayala's appeal of the attorney fees award against him rises or falls with his appeal of the judgment. He contends only that "[i]f a judgment is reversed and there is also a related appeal from an order awarding attorney fees and/or costs based on the judgment, the attorney's fees and/or costs award will be reversed." (Citing *Purdy v. Johnson* (1929) 100 Cal.App. 416, 420–421.) Since we affirm the judgment, we affirm the award of attorney fees as well.

### III. CONCLUSION AND DISPOSITION

The judgment is affirmed and the order awarding attorney fees is affirmed. Dawson shall recover his costs.

15

_____
Streeter, J.

We concur:


_____
Ruvolo, P.J.


_____
Rivera, J.

A142830/*Ayala v. Dawson*

A142830 – *Ayala v. Dawson*

Trial Court:   Solano County Superior Court

Trial Judge:   Hon. Scott L. Kays

Counsel:

Arthur Samuel Humphrey, Attorney at Law and Arthur Samuel Humphrey for Plaintiff and Appellant.

Terry A. Duree for Defendant and Respondent.