Filed 5/19/25  Pak v. Dixon CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| CHONG PAK,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CLAIRE DIXON,<br><br>        Defendant and Appellant. | A170921<br><br>(Alameda County<br>Super. Ct. No. 23CV029827) |

This is an action for unlawful detainer.  The trial court denied unlawful detainer relief, but entered an order that prohibits any occupancy of the premises due to serious fire hazards.  Defendant Claire Dixon claims the court exceeded its jurisdiction in entering the order and it violated her due process rights.  She argues that because of the summary nature of unlawful detainer, the order was unauthorized and that she was never afforded notice such an order could issue in this case. We affirm.

### I. BACKGROUND

#### A.    *Standard of Review*

Dixon does not challenge the court's findings of fact or the evidence supporting them.  Rather, her claim is that the court committed legal error because it did not have jurisdiction in this unlawful detainer case to

issue an order prohibiting all occupancy of the property. Our review of a question of law following a bench trial is de novo. (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) Nevertheless, "A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) Also, "Under the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 48.) This is especially true when an appeal proceeds on a clerk's transcript alone, and is supported by neither the reporter's transcript nor a settled statement. Where no reporter's transcript is provided, an order is presumed correct as to all evidentiary matters unless error is apparent on the face of the record. (*Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1124, fn. 4.) Given the nature of Dixon's claim of error, and the absence of a reporter's transcript, our statement of the facts supporting the court's order is taken from its statement of decision.

## B.    *Factual Background*

Plaintiff Chong Pak owns a warehouse property at 2825 West Street in Oakland. He filed this action against one James Koch, alleged to be a commercial tenant of the property with a three-year lease. Pak alleged that in violation of the lease and local law, the property was being used for residential purposes. Dixon appeared in the action through a prejudgment claim of right to possession. She had resided at the property since 2010.[1]

---

[1] Dixon was no longer living at the property at the time of trial.

In her answer to the complaint, Dixon alleged that this unlawful detainer was filed in retaliation for a civil complaint she filed against Pak that alleged breach of the warranty of habitability and covenant of quiet enjoyment, negligence, nuisance, and violation of the Oakland Tenant Protection Ordinance.[2] (Oakland Ord. No. 13608 § 2(Att. A) adding art. V, § 8.22.600 et seq. to Oakland Mun. Code.) In particular, Dixon alleged the habitability violations at the property were a lack of heat and weatherproofing, inadequate wiring and plumbing, a lack of hot water, improper or nonexistent fire alarm and suppression systems, broken windows, vermin infestation and inadequate light and ventilation. Her answer further alleged the rent was excessive due to the substandard conditions, and she sought an order that Pak be directed to correct all conditions as necessary to make the property habitable.

At trial, Pak testified that he had leased the property to James Koch pursuant to a written three-year commercial lease with options for extensions. The monthly rent was $5,800 with annual increases. Pak did not know what type of business Koch was going to conduct at the premises and, in fact, had never met him. All his dealings with Koch were through an intermediary, named Terri Wade, who Pak had known for many years and who brought tenants to him from time to time. Wade paid Pak in cash when Koch assumed possession under the lease. He did not receive another payment from Koch. Pak did not remember how he met Wade or what Wade did for a living. Pak did not meet Dixon until

---

[2] We take judicial notice of Dixon's complaint filed against Pak on March 20, 2023, in Alameda County Superior Court, case No. 23CV029682, alleging breach of warranty of habitability and quiet enjoyment, negligence, nuisance and violation of the Oakland Tenant Protection Ordinance. (Evid. Code, § 452 subd. (d).)

after this unlawful detainer was filed, and he did not know that she lived at the property.

Dixon gave a very different story. She was an artist and began living at the property in 2010. At one point, she lived there with about 20 people. She would meet with Pak to pay him rent. The amounts varied between $500 and $1,000 per month paid in cash. She said that text messages Pak had exchanged with Terri Wade and discussed in his testimony were actually exchanged with her. She also produced additional text messages on her phone from Pak. Dixon testified that a photograph Pak identified as depicting Terri Wade was a picture of one of the other artists who once resided at the property.

It was Dixon who procured other tenants for the property, and who collected the rents to pay to Pak. In 2021, she got into a dispute with Pak over the rent and other issues concerning the property. Pak had told her rent would be $6,500 per month, and it was around that time that she stopped paying rent.

Pak called an Oakland fire inspector who had inspected the property to testify about its possible fire hazards. He issued an inspection report and notice of violation that found "numerous specific violations" of the Oakland Municipal Code and ordered their immediate correction.[3] The inspector also testified that it was obvious more than one person was living at the property, and there were makeshift living quarters.

Pak also called a licensed contractor who was familiar with the property. He testified that the property has neither the necessary permits for residential occupancy nor the structural integrity for habitation. Electrical and plumbing services were unsuitable, and it was

---

[3] The notice of violation is not in the appellate record.

4

not safe for residential purposes. Photos produced at trial failed to show any obvious commercial activity at the property. Instead, the property appeared to be filled with debris and random items of personal property. Photos also showed signs that at least one or more people were living there.

The trial court found that Pak's testimony about entering into a commercial lease with James Koch was not credible. There was also insufficient evidence to conclude that Terri Wade was a real person, apart from being a pseudonym for Dixon. Accordingly, the court concluded that Pak did not establish a case for unlawful detainer because he did not prove a landlord-tenant relationship or the existence of a valid commercial lease. The court did not reach the issue of whether Dixon had an oral tenancy with Pak.

Instead, the court found that the property was not habitable, presented an ongoing fire hazard, and was unsafe for human occupancy. The court ordered that no person was allowed to occupy the property for either commercial or residential purposes until the fire hazards specified in the notice of violation were corrected. Pak was also enjoined from allowing anyone to reside at the property without valid permits or court orders allowing it to be used for residential purposes. The court entered a judgment against Pak on his claim for unlawful detainer, and ordered that no person be allowed to occupy the property until the fire hazards were cleared.

Dixon timely appealed the judgment and two orders setting times for her to remove her personal property from the premises.

## II. DISCUSSION

"The Unlawful Detainer Act governs the procedure for landlords and tenants to resolve disputes about who has the right to possess real property." (*Stancil v. Superior Court* (2021) 11 Cal.5th 381, 394.) " 'An unlawful detainer action is not based upon contract . . . ; it is a statutory proceeding and is governed solely by the provisions of the statute creating it.' " (*Kwok v. Bergen* (1982) 130 Cal.App.3d 596, 599.) " 'It has long been recognized that the unlawful detainer statutes are to be strictly construed and that relief not statutorily authorized may not be given due to the summary nature of the proceedings.' " (*Underwood v. Corsino* (2005) 133 Cal.App.4th 132, 136–137.)

Dixon argues that the judgment must be reversed because "[a]n unlawful detainer is a specialized and extremely limited procedure created by statute to address the sole issue of possession and those facts necessary to determine possession." She says the trial court was without jurisdiction to try any issue other than possession of the property. As a result, Dixon says, the injunctive order prohibiting occupancy of the premises must be reversed, and the orders directing her to retrieve her personal property are void because they are premised upon the unlawful injunction.

Dixon is mistaken. The term "jurisdiction" has many different meanings; there is a difference between a lack of jurisdiction, and those actions by a court that are in excess of its jurisdiction. (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660–661.) " 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' [Citation.] When a

6

court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and 'thus vulnerable to direct or collateral attack at any time.' " (*Id.* at p. 660.) In ordinary usage, lack of jurisdiction "may also 'be applied to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.' [Citation.] ' "[W]hen a statute authorizes [a] prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction." ' [Citation.] When a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable. [Citations.] That is, its act or judgment is valid until it is set aside, and a party may be precluded from setting it aside by 'principles of estoppel, disfavor of collateral attack or res judicata.' " (*Id.* at p. 661.)

Granting unauthorized relief in an unlawful detainer proceeding is an act in excess of the court's jurisdiction and is thus voidable, not void. (See *Vella v. Hudgins* (1977) 20 Cal.3d 251, 256–257 [unauthorized issue in an unlawful detainer raised by affirmative defense may be decided where there is a full and fair opportunity to litigate].) We considered the effect of deciding an issue that is not authorized by the unlawful detainer statute in *Ayala v. Dawson* (2017) 13 Cal.App.5th 1319 (*Ayala*). In *Ayala*, the trial court gave preclusive effect to a prior judgment in an unlawful detainer case that adjudicated a claim of equitable title against the tenant of the property. We affirmed and rejected an argument that the trial court must have decided only possession because the issue of title is distinct and not germane to unlawful detainer proceedings. (*Id.* at p. 1331.) In doing so we relied upon *Wood v. Herson* (1974) 39 Cal.App.3d

7

737, 745, which similarly gave preclusive effect to a judgment in an unlawful detainer case where a claim of title was raised by the defendant as an affirmative defense to eviction and litigated without objection. These cases demonstrate that exceeding the scope of relief authorized in an unlawful detainer action results in a judgment that is voidable, not void.

A challenge to a voidable judgment or order is subject to application of the principles of waiver or estoppel, including forfeiture by failure to raise an objection with the trial court. (*People v. Burnett* (1999) 71 Cal.App.4th 151, 178–179.) " ' "The purpose of the general doctrine of waiver [(forfeiture)] is to encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had." ' " (*People v. McKinnon* (2011) 52 Cal.4th 610, 636 & fn. 16.) Accordingly, the courts of appeal do not ordinarily entertain matters raised for the first time on appeal. (*Bayside Timber Co. v. Board of Supervisors* (1971) 20 Cal.App.3d 1, 5.) While they will often do so when the issue involves solely a question of law, employing such an exception is within the appellate court's discretion. (*Ibid.*) The exception is commonly employed when the question of law is based upon undisputed facts, or one that involves the public interest or questions of public policy. (See *Woodward Park Homeowners Assn., Inc. v. City of Fresno* (2007) 150 Cal.App.4th 683, 712–713.) "There is no rule, however, that an appellate court *must* consider a pure question of law raised for the first time on appeal." (*Souza v. Westlands Water Dist.* (2006) 135 Cal.App.4th 879, 898–899.)

Here, evidence of the unsuitability of the property for human habitation was apparently received without objection, and it is

8

uncontroverted that the property is not permitted for residential occupancy. The court issued a tentative and proposed statement of decision that denied Pak unlawful detainer relief, and instead ordered that no person, including Dixon, may occupy the property except to retrieve their personal belongings. Dixon did not object to the order on the basis that it exceeded the court's authority. She offered no opportunity for the court to consider a means to modify its order to address only the issue of possession. Rather, her only challenge to the order was that it should be modified to clarify the terms of her ability to enter the premises to remove her personal property. She did not object to the scope of relief or to the prohibition of occupancy. In fact, after trial, she represented to the court in writing that the property was "not being used residentially, and will never be used residentially by [Dixon], or anyone else, during her tenancy." Dixon could have objected that the safety of the property for occupancy and other uses was beyond the scope of this unlawful detainer case, but she did not. Instead, she " 'acceded to the summary and expedited procedures of unlawful detainer with respect to' " this issue. (*Ayala, supra,* 13 Cal.App.5th at pp. 1329–1330; see *Martin-Bragg v. Moore* (2013) 219 Cal.App.4th 367, 387 [discussing how an unlawful detainer may be treated as an ordinary civil action to resolve additional causes of action in the same proceeding].) As we state above, this appeal has proceeded without the benefit of a reporter's transcript or a settled or agreed statement. (See, e.g., *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186–187.) In the circumstances, we will not exercise our discretion to address Dixon's claim of error. Any error due to the extra-jurisdictional nature of the court's order has been forfeited.

Dixon's failure to bring the extra-jurisdictional nature of the court's order to the trial court's attention in her objections to the statement of decision also defeats her due process claim. (See, e.g., *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 285–286.)

## III. DISPOSITION

The judgment and later orders directing Dixon to remove her personal property from 2825 West Street in Oakland are affirmed.  Each party shall bear their own costs on appeal.

SIGGINS, J.*

WE CONCUR:

BROWN, P. J.
STREETER, J.

---

* Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10