Filed 12/16/21  Turner v. Center Street Lending Services CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LAWRENCE TURNER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CENTER STREET LENDING SERVICES et al.,<br><br>    Defendants and Respondents. | B305895<br><br>(Los Angeles County Super. Ct. No. BC648429) |

APPEAL from an order of the Superior Court of Los Angeles County, Patricia Nieto, Judge.  Affirmed.

TamerLawCorp, Steven Michael Tamer, for Plaintiff and Appellant.

Fidelity National Law Group, Kevin R. Broersma, for Defendant and Respondent Center Street Lending Services, MP IV, LLC.

Wedgewood, Elaine Yang, for Defendant and Respondent Duke Partners II, LLC.

We consider whether a trial court's resolution of a forgery defense at an unlawful detainer trial was properly given preclusive effect in a later civil action seeking relief on the same forgery theory.

## I.  BACKGROUND[1]

### A.  *Pertinent Transactions Involving the Real Property in Question*

In November 1993, plaintiff and appellant Lawrence Turner (Turner) acquired property located at 1459 E. 121st Street, Los Angeles, CA 90059 (the Property).  Turner later executed a grant deed conveying his interest in the Property to the Lawrence Nathaniel Turner Revocable Living Trust (the Trust).  In his capacity as trustee, Turner then signed a deed of trust using the Property as security for a $275,000 loan from Wells Fargo.

Subsequently, in October 2013, a grant deed conveyed the Trust's ownership interest in the Property to Diversified Realty and Financial Services (Diversified).  This document, which we shall refer to as the Diversified Deed, is central to this appeal.  On its face, it appears to be signed on October 9, 2013, by Turner in his capacity as Trustee of the Trust.  (As we will soon discuss,

---

[1]   Our recitation of the pertinent background is drawn from the allegations in the operative complaint, exhibits attached to the complaint, and documents judicially noticed by the trial court.  (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 166 ["'A motion for judgment on the pleadings, like a general demurrer, tests the allegations of the complaint or cross-complaint, supplemented by any matter of which the trial court takes judicial notice . . . .'"].)

2

Turner claims he never signed the Diversified Deed and his signature on it is a forgery.)

The following month, Turner executed another grant deed conveying his interest in the Property to himself in his capacity as Trustee of the Trust. Both the Diversified Deed and the later-signed November 2013 grant deed were notarized on November 18, 2013, and recorded on January 30, 2014.

Diversified executed a deed of trust pledging the Property as collateral to secure a $108,000 loan from defendant and respondent Center Street Lending Services, MP IV, LLC (Center Street). Rashid K. Khalfani (Khalfani), also known as Christopher Lee (as Turner would later discover), signed on behalf of Diversified as its managing member. The following day, Diversified executed a grant deed conveying its ownership interest in the Property to Capital Cove Asset Management (Capital Cove).[2] Khalfani again signed the grant deed on behalf of Diversified as managing member.

### B.     The Capital Cove Unlawful Detainer Action

In October 2014, Capital Cove filed an unlawful detainer lawsuit against Turner. The unlawful detainer complaint alleged the Property was sold to Capital Cove in January 2014 and title had been duly perfected. One of the exhibits attached to the complaint and incorporated by reference was the Diversified Deed.

In May 2015, the trial court resolved the unlawful detainer case via a statement of decision following a bench trial. The

---

[2]     Turner understood Khalfani was also Capital Cove's principal.

3

statement of decision indicates trial began on May 21, 2015, and concluded on May 26, 2015; both parties were represented by counsel. The statement of decision further reports the court ruled on motions, heard testimony from witnesses for both sides, considered objections to evidence, and admitted exhibits in evidence.[3]

According to the statement of decision, Turner sought to defend against the unlawful detainer by arguing Capital Cove had not perfected title to the Property. The court permitted Turner to mount such a defense and present evidence within the framework of the unlawful detainer action.

As pertinent for our purposes, the trial court's statement of decision explains Turner's defense included his denial that the signature on the Diversified Deed, as well as other documents relating to the Property, was actually his. A witness for Capital Cove (one Mr. Clarke) rebutted the assertion by testifying he spoke with Turner about a short sale on behalf of Diversified in the last quarter of 2013, managed the short sale, and personally met with Turner in 2014. The witness testified Turner was "upside down" on the Property via a home equity loan debt to Wells Fargo and wanted to get out of the debt. The trial court also admitted documents Capital Cove and Diversified relied on in purchasing the Property, including a January 2014 letter from Wells Fargo approving a short sale to Diversified that would fully resolve Turner's home equity loan and a May 2013 letter from Turner stating he needed a short sale to save him from foreclosure. Considering this and other evidence, the trial court acknowledged "Turner denied signing these documents" but

---

[3] No reporter's transcript of the unlawful detainer trial was lodged with the court below or with this court on appeal.

concluded "Turner's testimony in this respect lacked credibility" and found, after "reviewing the signatures as well as the exhibits, the certified notarizations, and Mr. Clarke's testimony" that "all these documents were in fact signed by Turner as indicated."

Turner appealed the trial court's unlawful detainer judgment. The appellate division of the superior court affirmed. The appellate division recognized Turner had contended and continued to maintain his signature on the Diversified Deed was a forgery, but the appellate division concluded there was "overwhelming" evidence supporting the trial court's decision to reject the contention as not credible. The appellate division specifically rejected Turner's argument that expert testimony was required to authenticate his signature and held (consistent with established law (Evid. Code, § 1417)) that the trial court was entitled to make its own determination regarding the genuineness of handwriting based on the evidence presented.

### C. *Subsequent Events and This Lawsuit*

Although the unlawful detainer matter proceeded to judgment and subsequent affirmance, it appears Turner was not at that time ejected from the property. Instead, Prestige Default Services would record a Notice of Default years later, in September 2016, asserting Diversified was in arrears on the previously executed deed of trust. Prestige recorded a Notice of Trustee's Sale in January 2017. Defendant and respondent Duke Partners II, LLC (Duke Partners) was the successful bidder at the trustee's sale. Turner asserts that Duke Partners then commenced its own unlawful detainer proceedings and ultimately had Turner evicted from the Property.

5

Turner then filed a civil complaint against Center Street, Capital Cove, Diversified, and others. Several amended complaints ensued, ultimately resulting in the operative fourth amended complaint (the operative complaint), filed in April 2018, that named Duke Partners as an additional defendant.

The operative complaint alleges seven causes of action: fraud, conversion, receiving and withholding stolen property, slander of title, wrongful foreclosure, cancellation of deed, and quiet title. As relevant here, the fraud, conversion, and stolen property causes of action are alleged against Khlafani and Capital Cove, the wrongful foreclosure cause of action is alleged against Center Street and Duke Partners, and the cancellation of deed and quiet title causes of action are alleged against Capital Cove, Center Street, and Duke Partners.

The wrongful foreclosure cause of action alleges Khalfani and Capital Cove's conduct led to an illegal sale of the Property pursuant to the Diversified Deed that includes Turner's allegedly forged signature. The cancellation of deed and quiet title causes of action similarly turn on the allegation that Khalfani forged Turner's signature on the Diversified Deed.[4] All three causes of action allege Center Street is a named defendant on the theory that Center Street, as a party to the Diversified Deed that Turner sought to cancel, was a necessary and indispensable party.

Attached as an exhibit to Turner's operative complaint is a Securities and Exchange Commission (SEC) complaint filed in June 2015 against Khalfani and Capital Cove: *Securities and*

---

[4] Turner alleged he was the rightful owner of the Property and, as a result, sought cancellation of not only the allegedly forged Diversified Deed but also of all subsequent instruments pertaining to the Property.

6

*Exchange Commission v. Capital Cove*, et al., 8:15-cv-00980-JLS-JC. The operative complaint describes the SEC action as one brought to halt an "offering fraud" in which Khalfani and others raised money from investors by falsely claiming to invest proceeds in distressed real estate but instead using the money for their own benefit.

### D.    *Defendants' Motions for Judgment on the Pleadings*

Duke Partners defended against the operative complaint by filing a motion for judgment on the pleadings. The motion argued Duke Partners was entitled to judgment because the issue of whether or not Turner signed the Diversified Deed was previously and fully adjudicated in the earlier unlawful detainer action Capital Cove brought against Turner. Duke Partners filed a request for judicial notice in connection with its motion, asking the court notice, among other things, the complaint in the unlawful detainer action, the statement of decision following the trial in that action, and the decision of the appellate division of the superior court affirming the trial court's judgment.

Turner opposed the motion, citing precedent that holds the summary nature of unlawful detainer actions means they can have only limited issue or claim preclusion effect and will not prevent litigation of a subsequent action to resolve questions of title. Turner submitted a declaration from his attorney with his opposition, and the declaration attached a federal court summary judgment order resolving the SEC complaint as against Khalfani. Turner did not seek judicial notice of the order or the associated SEC complaint.

7

The trial court granted Duke Partners' request for judicial notice and its motion for judgment on the pleadings.[5] The court found (1) the forgery issue that animates Turner's lawsuit was identical to the forgery issue resolved in the Capital Cove unlawful detainer action, and (2) the unlawful detainer action resulted in a final judgment on the merits. While these findings would ordinarily justify invocation of preclusion principles, the court additionally considered whether the nature of the unlawful detainer action should bar resort to claim or issue preclusion. The court specifically analyzed *Wood v. Herson* (1974) 39 Cal.App.3d 737 (*Wood*), a case in which a court of appeal affirmed the dismissal of a case because an issue was precluded by a judgment in a prior unlawful detainer action, and *Vella v. Hudgins* (1977) 20 Cal.3d 251 (*Vella*), a case in which the California Supreme Court found an unlawful detainer judgment did not preclude a subsequent civil case.

The court concluded the scenario it confronted was more akin to *Wood* than *Vella*, explaining the record before it was sufficiently developed to show Turner raised the forgery issue as an affirmative defense without objection in the unlawful detainer action and had a fair opportunity to actually litigate the defense. In so reasoning, the court highlighted several aspects of the unlawful detainer court's statement of decision, including its explicit finding that Turner's testimony—and specifically his claim of a forged signature—was not credible and the reference to

---

[5] The court noted Turner had not requested judicial notice of the judgment against Khalfani in the SEC action. The court added it would not have considered the judgment even if judicial notice had been requested because the SEC action was "irrelevant" to the issues before the court.

8

trial having taken place on four court days, which appeared longer than a typical unlawful detainer trial. The trial court additionally found it significant that Turner could have moved (but did not move) to consolidate the unlawful detainer proceeding with a civil action, which would have required the unlawful detainer court to determine whether the issues were so complex and intertwined with the issue of title that the entire case should be treated as a civil action. Having determined, without dispute, that the allegation of a forged Diversified Deed formed the basis of causes of action alleged against Duke Partners, the trial court found the causes of action were barred by the doctrine of issue preclusion and Duke Partners was entitled to judgment in its favor.

Center Street also filed a motion for judgment on the pleadings. Center Street's motion argued Turner's claims were barred by both claim preclusion and issue preclusion principles, and we need discuss only the latter. The issue preclusion argument, like Duke Partners' argument, contended the issue of whether Turner signed the Diversified Deed had been previously and fully adjudicated in the unlawful detainer action.

Turner opposed Center Street's motion. Turner argued the unlawful detainer matter was decided before judgment was rendered in the SEC action and the judgment in the SEC case was new evidence that should bar resort to preclusion principles. (Turner specifically requested the trial court take judicial notice of the order granting summary judgment in the SEC matter, which found Khalfani violated various provisions of federal securities laws.[6]) Turner further argued the judgment in the

---

[6]     On appeal, but not in the trial court, Turner sought judicial notice of the complaint in a different federal court case involving

9

unlawful detainer matter was invalid because it was never enforced. i.e., Turner was not evicted from the Property at that time and another unlawful detainer lawsuit was later filed to achieve that end. Finally, Turner argued the court hearing the unlawful detainer action did not specifically find Turner signed the forged deed.

The trial court granted Center Street's motion for judgment on the pleadings on issue preclusion grounds for the same reasons it granted Duke Partners' motion. In doing so, it granted Center Street's requests for judicial notice and denied Turner's judicial notice request because Turner had not adequately demonstrated the relevance of the summary judgment order in the SEC case to the motion for judgment on the pleadings. The court entered judgment for Duke Partners and Center Street.

## II. DISCUSSION

This is one of the uncommon cases in which a judgment in an unlawful detainer action is properly given preclusive effect in subsequent civil litigation. The detailed statement of decision from the prior unlawful detainer matter sufficiently indicates Turner had a full and fair opportunity (which he exercised) over the course of a multi-day bench trial to litigate the claim that his signature on the Diversified Deed was not genuine. The trial court found Turner's testimony was not credible, and that finding was well-supported by other evidence. This rejected forgery claim is also the core of Turner's civil action in this case. Because

---

Center Street, as well as a notice relating that other case to the SEC action. This court denied the request citing *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.

10

the forgery issue was actually litigated and necessarily decided in the unlawful detainer, and because the SEC action (which has not been shown to involve any allegation of fraud *by forgery*) provides no basis for refusing to apply issue preclusion principles, the trial court was correct to grant Duke Partners' and Center Street's motions for judgment on the pleadings.

### A.    *Legal Background*

"A motion for judgment on the pleadings is properly granted when the 'complaint does not state facts sufficient to constitute a cause of action against that defendant.' (Code Civ. Proc., § 438, subd. (c)(1)(B)(ii).)  The grounds for the motion must appear on the face of the challenged pleading or from matters that may be judicially noticed.  (Code Civ. Proc., § 438, subd. (d).)  The trial court must accept as true all material facts properly pleaded, but does not consider conclusions of law or fact, opinions, speculation, or allegations contrary to law or facts that are judicially noticed.  [Citation.]" (*Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.* (2006) 138 Cal.App.4th 1215, 1219-1220.)

Issue preclusion (sometimes referred to as collateral estoppel) prevents a party from relitigating an issue that was finally determined in a prior judicial or quasi-judicial action. (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.)  The doctrine applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id*. at 825.)

11

We review de novo a trial court's decision to apply preclusion doctrine. (See, e.g., *Samara v. Matar* (2017) 8 Cal.App.5th 796, 803.)

### B. *The Trial Court Rightly Granted Judgment for Defendants*
#### 1. *The customary elements of issue preclusion are met*

Turner contends the trial court's rulings granting the motions for judgment on the pleadings were erroneous because the forgery issue was not actually litigated and necessarily decided in the unlawful detainer matter and because he believes the unlawful detainer judgment was not final. Turner is wrong on both points.

"An unlawful detainer action is a summary proceeding ordinarily limited to resolution of the question of possession. [Citation.]" (*Malkoskie v. Option One Mortgage Corp.* (2010) 188 Cal.App.4th 968, 973.) From this uncontroversial proposition, however, Turner leaps to the blanket assertion that a ruling in an unlawful detainer cannot be used to bar claims in an unlimited civil case. That overstates things.

It is true that unlawful detainer judgments are usually given limited preclusive effect. (*Malkoskie*, *supra*, 188 Cal.App.4th at 973.) They generally will "not prevent one who is dispossessed from bringing a subsequent action to resolve questions of title [citations], or to adjudicate other legal and equitable claims between the parties [citations]." (*Vella*, *supra*, 20 Cal.3d at 255.) But, as is often the case with general rules, there are exceptions. One such exception is for unlawful detainer suits like the one at issue here that involve "a narrow and

12

sharply focused examination of title" in which the plaintiff-purchaser at a trustee's sale "must show that he acquired the property at a regularly conducted sale and thereafter 'duly perfected' his title." (*Ibid.*) Judgments in this sort of unlawful detainer case may properly bar subsequent fraud or quiet title suits founded upon the same allegations. (*Id.* at 255-256; see also *id.* at 256-257 ["'[F]ull and fair' litigation of an affirmative defense—even one not ordinarily cognizable in unlawful detainer, if it is raised without objection, and if a fair opportunity to litigate is provided—will result in a judgment conclusive upon issues material to that defense"]; *Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, 1327 [issue preclusion can be triggered by unlawful detainer proceedings "if the party to be bound agreed expressly or impliedly to submit an issue to prior adjudication [citation] and had a full and fair opportunity to litigate [citation] under circumstances affording due process protections [citation]"].)

Our high court in *Vella* discussed *Wood, supra*, 39 Cal.App.3d as an example of a case where unlawful detainer proceedings were appropriately given preclusive effect in later litigation. The plaintiff in *Wood* had asserted an affirmative defense of fraud in a prior unlawful detainer action that was substantively identical to one of the causes of action it asserted in the civil action being appealed. (*Id.* at 740.) The *Wood* unlawful detainer differed from a normal unlawful detainer in many respects, including "the length of the 'summary' unlawful detainer hearing (seven days), the scope of discovery by the parties ('extensive' and 'complete'), the quality of the evidence ('detailed'), and the general character of the action ('[clearly] . . . not the customary unlawful detainer proceeding').

13

[Citation.]" (*Vella, supra*, 20 Cal.3d at 256.) The unlawful detainer record in *Wood* permitted the court to conclude "there [would] be no miscarriage of justice" if the unlawful detainer judgment were found to have preclusive effect, because the "Woods have had their day in court." (*Wood, supra*, at 745.)

In contrast, the circumstances of the unlawful detainer in *Vella* itself did not warrant giving the judgment preclusive effect over a fraud claim involving activities not directly related to the technical regularity of a trustee's sale. The record of the unlawful detainer proceeding contained neither a transcript of the hearing nor any findings of fact or conclusions of law, other than a notation in a minute order that Vella had not proved her affirmative defenses of waiver, estoppel, and tender. (*Vella, supra*, 20 Cal.3d at 258.) The estimated length of the unlawful detainer trial (two hours) when compared with the length of the trial in the subsequent civil action (four days) created a strong inference that the former proceeding was a "conventional" unlawful detainer action, unlike the proceedings in *Wood*. (*Ibid.*)

The record before us does not have everything that the record had in *Wood*, but what we do have is adequate to conclude the issue of whether the Diversified Deed was forged was actually litigated and necessarily, finally decided in the unlawful detainer action. The statement of decision reflects the unlawful detainer proceedings lacked the ordinary summary character: trial proceeded over the course of at least two court days;[7] both sides were represented by counsel; and the court ruled on motions,

---

[7] The unlawful detainer court's statement of decision reflects the trial commenced on May 21, 2015, and ended on May 26, 2015. The appellate division of the superior court stated the trial was held over two court days.

14

heard testimony, and considered and decided objections to evidence. More importantly, the statement of decision reflects the issue of the alleged forged deed was thoroughly explored in trial testimony. Turner denied the signature on the Diversified Deed was his, but he admitted a signature on another document before the court was his own. The court expressly found Turner's testimony lacked credibility. It also expressly stated it reviewed the signatures and exhibits before it, the certified notarizations, and Clarke's testimony (which the court did find credible) and concluded all the documents concerning the Property with what appeared to be Turner's signature were in fact signed by him. While the record of the unlawful detainer proceedings we have does not include pleadings other than the complaint (such as the answer or some of the motions the statement of decision references) or a transcript of the trial, the statement of decision is sufficiently detailed to permit a reliable conclusion that the question of whether the Diversified Deed was forged was fully litigated in the unlawful detainer proceeding.

> 2. *The SEC complaint is not new evidence that would justify declining to invoke issue preclusion*

Turner contends the SEC action, which was filed the month after the statement of decision was rendered in the unlawful detainer matter, constituted new facts or changed conditions such that issue preclusion should not apply. (See generally *Evans v. Celotex Corp.* (1987) 194 Cal.App.3d 741, 748 ["Res judicata or collateral estoppel 'was never intended to operate so as to prevent a re-examination of the same question between the same parties where, in the interval between the first and second actions, the

15

facts have materially changed or new facts have occurred which may have altered the legal rights or relations of the litigants'"] (*Evans*); but see *Direct Shopping Network, LLC v. James* (2012) 206 Cal.App.4th 1551, 1561 [citing *Evans* and explaining that "new evidence, however compelling, is generally insufficient to avoid application of collateral estoppel . . ."].)

The core problem with Turner's argument is that the sole document from the SEC action that was before the trial court (the complaint) does not refer to the Property and—more important—does not allege the existence of a scheme by Khalfani to obtain investors' real property *through forgery*. Rather, it alleges Khalfani defrauded investors by making false statements regarding the nature of what was advertised as an investment opportunity.[8] The SEC complaint accordingly does not reveal new facts or changed circumstances relevant to Turner's forgery-based claims in his civil suit, nor does it undermine the evidence in the record indicating the forgery question was fully and fairly litigated in the unlawful detainer action.

### 3. *Turner's remaining arguments to avoid issue preclusion are meritless*

Turner also argues, for the first time on appeal, that he did not agree to submit the issue of whether the Diversified Deed was forged for prior adjudication. Whether Turner agreed to submit the issue is a question of fact, and because Turner did not make argument in the trial court, he cannot now raise it for the first

---

[8]    We address, *post*, Turner's argument that the trial court erred by declining to take judicial notice of the SEC action summary judgment order in connection with Center Street's motion for judgment on the pleadings.

16

time on appeal. (See, e.g., *Krechuniak v. Noorzoy* (2017) 11 Cal.App.5th 713, 725.) In any event, Turner's assertion is belied by the statement of decision, which memorializes the unlawful detainer court's willingness to permit Turner to argue and present evidence regarding his defense that Capital Cove had not perfected title to the Property—including because (and perhaps only because) the Diversified Deed was forged. Putting a defense in issue is tantamount to express consent to submit the issue for decision.

Turner also contends issue preclusion principles should not apply because the unlawful detainer court's statement of decision makes a finding only that Turner signed "all these documents" and does not specifically enumerate the Diversified Deed as a document Turner signed.[9] As Turner seems to read the

---

[9] Here is what the statement of decision says in this regard: "[T]urner denied that the signature on Exhibit 7 [a certified copy of the Diversified Deed] was his and denied his signature on any of the multiple documents relating to the [Property] . . . . He did accept that Ex. K contains his signature. [Capital Cove]'s witness Clarke testified that he spoke with Turner about a short sale on behalf of Diversified in the last quarter of 2013, was a manager on the short sale and reviewed earlier work of others, and personally met with Turner in 2014. He said Turner was 'upside down' on the [Property] owing a home equity loan to Wells Fargo bank and wanted to get out of the debt. [¶] . . . [¶] The court admitted as business records various documents which Capit[a]l Cove and its predecessor in title Diversified had relied [on] in purchasing the [Property], including: (1) Ex. 10 the Short Form Deed of Trust establishing the home equity loan by Wells Fargo which was subsequently reconveyed by Ex. J; (2) a letter of January 10, 2014, from Wells Fargo (Ex. 1) approving a short sale in the amount of $175,000 to Buyer Diversified which would fully resolve Turner's home equity loan in excess of $303,000; (3)

17

statement of decision, the unlawful detainer court found only that he signed the exhibits identified earlier in the same paragraph in which the court makes its finding that Turner signed "all the documents." Reading the statement of decision in this limited manner, however, makes no sense in context. Some of the documents identified in that paragraph were not even purportedly signed by Turner, and the viability of Turner's asserted forgery defense turned on whether he signed the Diversified Deed, as the court earlier acknowledged in the statement of decision itself. Since the trial court found for Capital Cove, it necessarily concluded both that Turner's defense was unmeritorious, and that he had, in fact, signed the purportedly forged deed.

Turner further contends issue preclusion cannot apply because there was no final adjudication. That is rather obviously belied by the record. The unlawful detainer matter proceeded to final judgment. Turner appealed to the appellate division and the appellate division affirmed. No more is necessary for finality.

a letter of May 23, 2013, from Turner (Ex. 11) to "to whom it may concern" stating that he needed a short sale to save him from foreclosure; (4) a form "Making Home Affordable" application signed by Turner on 4/30/13; (5) a Grant Deed signed November 15, 2013 by . . . Turner (Ex. O) by which Turner transferred the [Property] to himself as Trustee of the . . . Trust. The date of the Wells Fargo reconveyance on February 20, 2014 (Ex. J) is consistent with all of the above exhibits. Turner denied signing these documents but the court found Turner's testimony in this respect lacked credibility and reviewing the signatures as well as the exhibits, the certified notarizations, and Mr. Clarke's testimony found that all these documents were in fact signed by . . . Turner as indicated."

18

In particular, while Turner emphasizes (without citation to the record) that no writ of execution was issued following the judgment and Duke Partners subsequently filed additional unlawful detainer actions against Turner, failure to execute on a judgment does not affect the validity of the judgment itself.[10]

---

[10] Turner makes a separate, but related, argument that the trial court erred by denying his request for judicial notice of documents related to the SEC Action and asks that we reverse the trial court's rulings. The argument does not apply to Duke Partners' motion for judgment on the pleadings because he did not file a request for judicial notice in connection with that motion. But as to Center Street's motion, the trial court denied Turner's request for judicial notice on the ground that the documents he sought to notice were irrelevant. This is a proper ground for denial (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063) and the trial court did not abuse its discretion in so ruling. The summary judgment order Turner proffered for judicial notice finds Khalfani violated various provisions of federal securities laws. While it may accordingly be considered evidence of fraudulent activity, there is nothing to suggest the fraud was accomplished by means of forgery. And forgery is the sole predicate of Turner's lawsuit that we are concerned with here.

19

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:


RUBIN, P. J.


KIM, J.