Filed 4/12/22  Art Works Studio & Classroom, LLC v. Leonian CA2/7
(unmodified opinion attached)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| ART WORKS STUDIO & CLASSROOM, LLC et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> JEANNE LEONIAN, et al., <br><br> Defendants and Respondents. | B304461 <br><br> (Los Angeles County Super. Ct. No. 19STCV14497) <br><br> ORDER MODIFYING OPINION AND DENYING REHEARING |

THE COURT:

It is ordered that the opinion filed herein on March 14, 2022 be modified as follows:

The last nine words in the final sentence of the paragraph on page 2 are deleted, so that the sentence now reads:

Because the issues litigated and decided in the unlawful detainer actions have rendered moot appellants' claims of possession, appellants did not appeal the final judgments in the

unlawful detainer actions and appellants have since vacated the properties, we reverse the order granting the anti-SLAPP motion and remand to the trial court to vacate the order.[3]

The last nine words in the second sentence of the disposition on page 20 are deleted, so that the sentence now reads:

We reverse the order granting the anti-SLAPP motion and remand the matter to the trial court to vacate the order.

These modifications change the appellate judgment.

Respondents' petition for rehearing is denied.

_____

PERLUSS, P. J.                FEUER, J.                WISE, J.[*]

_____

[*]        Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 3/14/22  Art Works Studio etc. v. Leonian CA2/7 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ART WORKS STUDIO & CLASSROOM, LLC et al., | B304461 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 19STCV14497) |
| v. | |
| JEANNE LEONIAN, et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Monica Bachner, Judge.  Dismissed.

Novian & Novian, Farhad Novian and Alex Tablosky for Plaintiffs and Appellants.

Kashfian & Kashfian, Ryan D. Kashfian and Robert A. Kashfian for Defendants and Respondents.

_____

This appeal involves a dispute arising from two commercial leases for properties formerly occupied by Art Works Studio & Classroom, LLC (Art Works) and Coffee + Food, LLC (collectively appellants). Appellants appeal from an order entered after the trial court partially granted a special motion to strike (Code Civ. Proc., § 425.16,[1] "anti-SLAPP" statute)[2] filed by defendants and respondents Massco Investments, Inc. (Massco) and Larchmont Place, LLC (Larchmont). While this appeal was pending final judgments were entered against appellants in unlawful detainer actions filed by Larchmont. Each of the causes of action struck by the trial court (and indeed every cause of action) in the operative complaint is premised on appellants having an ongoing possessory interest in the properties. Because the issues litigated and decided in the unlawful detainer actions have rendered moot appellants' claims of possession, appellants did not appeal the final judgments in the unlawful detainer actions and appellants have since vacated the properties, we reverse the order granting the anti-SLAPP motion and remand to the trial court to vacate the order as well as the derivative order awarding attorneys' fees.[3]

---

[1]  All further undesignated statutory references are to the Code of Civil Procedure.

[2]  "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 413, fn. 2.)

[3]  Because dismissing the appeal as moot would constitute an affirmance, we have elected to reverse with directions. (See generally *Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 134-135;

# FACTUAL AND PROCEDURAL BACKGROUND

1. *The First Amended Complaint*

Appellants were commercial tenants in a building formerly owned by David Leonian (Leonian) and other members of the Leonian family. Coffee + Food and Art Works entered into five-year leases with Leonian on January 1, 2013 and March 1, 2013, respectively. The initial terms of the leases ended on December 31, 2017 for Coffee + Food and on February 28, 2018 for Art Works. Both leases provided an option to extend the lease term by one five-year period, which had to be exercised at least 60 days before expiration of the initial lease term. Appellants allege they timely exercised their options to extend both leases by five years, and Leonian accepted and acknowledged the extensions by continuing to accept the increased rent payments made during the option periods.

Around February 2019 appellants learned the Leonian family had retained Paul Brehme, an agent with WESTMAC Commercial Brokerage Company, Inc., to market and sell the property.[4] Brehme created a sales brochure, which appellants allege "represented the true and correct expiration dates of the Coffee + Food Lease and the Art Works Lease."[5] Appellants also

---

*Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2011) 198 Cal.App.4th 939, 945.)

[4] Leonian, members of the Leonian family, Brehme and WESTMAC are defendants in the civil action but are not parties to this appeal.

[5] The sales brochure for the building stated the expiration dates of the Coffee + Food and Art Works leases were December 31, 2022 and February 28, 2021, respectively. The brochure also

allege Leonian informed Brehme and WESTMAC that appellants exercised their contractual option rights to extend their leases.

In March 2019 MCAP Partners initiated negotiations to buy the building.[6]  Appellants allege Brehme engaged in a dual representation relationship with the Leonian family and MCAP Partners.  Brehme prepared estoppel certificates and  Leonian presented the certificates to Cyndi Finkle, principal of Art Works and Coffee + Food, for signature.  Leonian told Finkle the prospective buyer was asking for estoppel certificates and explained "an 'estoppel' is a 'form' that is 'very standard practice in sophisticated commercial leasing,' and that '[Brehme] filled out the form to the best of his ability.'"

The certificates contained preprinted form language with blanks that were filled in either by hand or by computer. Paragraph two of the Art Works certificate stated, "The Lease term commenced on March 1st, 2013 and expires on February 28th, 2018."  Paragraph two of the Coffee + Food certificate stated, "The Lease term commenced on January 1st, 2013 and expires on December 31st, 2017."  Brehme had typed the dates on both certificates.

Paragraph five of the certificates stated, "The Lease has not been modified, orally or in writing, since its execution, except as herein above identified.  The Lease is in full force and effect and contains the entire agreement between Lessor and Lessee, except (if there are no exceptions, write 'NONE')."  Finkle handwrote the

---

noted that Art Works has "one 2-year option after their lease expires 2/28/21."

[6]      Plaintiffs allege MCAP Partners is the alter ego of Larchmont and Massco.

word "NONE" following that language. Paragraph 14 stated, "Lessee is aware that buyers, lenders and others will rely upon the statements made in this Estoppel Certificate, and has therefore adjusted the language hereof as necessary to make it an accurate statement of the current facts concerning the Lease. If no such adjustments have been made, said parties may rely upon the statements in this form as printed." Paragraph 15 stated, "Additional terms (if there are no additional items, write 'NONE')." After this language Finkle handwrote "NONE." Finkle signed the certificates on March 22, 2019.

On April 17, 2019 Alexander Massachi, Executive Vice President of MCAP Partners, informed Finkle via email that MCAP Partners would be the new owner of the property and asked to set up a meeting to discuss the future of the building "as well as the current state of your expired leases (for Artwork [sic] & Coffee + Food) given the estoppel certificates signed." Finkle was surprised to receive Massachi's email because she understood the terms of both leases had been extended. Eight days after receiving Massachi's email, and the day before escrow closed on the sale of the property, appellants filed their complaint. Approximately one month later, on May 31, 2019, Larchmont served appellants with 30-day notices to terminate their leases.

On August 12, 2019 appellants filed their first amended complaint. As to Massco and Larchmont, appellants alleged claims for breach of the lease agreements (first and second causes of action), specific performance (third and fourth causes of action), intentional interference with prospective economic relations (seventh and eighth causes of action) and negligent interference with prospective economic relations (ninth and 10th

causes of action).[7]  In paragraph 59 of the operative complaint, appellants allege MCAP Partners' service of the notices to terminate were "on the incorrect and fabricated basis that Plaintiffs Coffee + Food and Art Works [were] month-to-month tenants" and such action constituted "an unequivocal and absolute repudiation of the Coffee + Food Lease and Art Works Lease and a refusal to perform the terms thereof."  Because Brehme was serving as a dual representative to the Leonian family and MCAP Partners for the sale of the building, appellants allege MCAP Partners possessed knowledge that appellants had extended their lease agreements but MCAP Partners nevertheless served the notices to terminate under the guise appellants were in a month-to-month tenancy.  Appellants further allege in paragraphs 53 and 54 that Leonian misrepresented to MCAP Partners that appellants had not exercised their option rights to extend the terms of their leases, and Brehme "advised MCAP Partners that it should use, albeit wrongfully, the Estoppel Certificates in an attempt to characterize [appellants] as month-to-month tenants . . . ."

2. *Massco's and Larchmont's Motion to Strike*

On October 11, 2019 Larchmont moved, and Massco joined, to strike the complaint pursuant to section 425.16.[8] Defendants argued the causes of action alleged against them were predicated

---

[7]    The fifth and sixth causes of action for intentional interference with contractual relations are alleged only against Brehme and WESTMAC.

[8]    In addition to joining the motion Massco sought to strike the alter ego allegations against it.

6

on their service of the 30-day notices to terminate—conduct that was protected by the anti-SLAPP statute. Defendants also asserted appellants could not demonstrate a reasonable probability of success on the merits, in part because the estoppel certificates Finkle signed conclusively established appellants were in month-to-month tenancies.

In their opposition appellants maintained their causes of action against respondents were predicated on Massachi's April 17, 2019 email in which he "repudiate[d] the full force and effect of Plaintiffs' written lease agreements" because he asserted the agreements had "'expired . . . given the estoppel certificates signed [by appellants].'" Appellants argued the email was not protected conduct and service of the 30-day notices to terminate was "merely incidental to the challenged claims and provide context therefor." Even if the causes of action were based on protected conduct, appellants asserted they could demonstrate a reasonable probability of success on the merits. Appellants could both show they exercised their options to extend their leases, and MCAP Partners was aware appellants had exercised their options. MCAP Partners' reliance on the estoppel certificates was consequently unjustified.[9] In addition, Appellants argued the estoppel certificates did not support MCAP Partners' theory that they were signed after the leases had expired because the certificates included the present tense of the word "expires," suggesting the lease terms had not yet expired. Appellants also

---

[9] At oral argument, plaintiffs' counsel argued Massachi's April 17, 2019 email, and not the termination notices, was "what caused . . . the initial complaint to be filed in April," as well as defendants' "wrongful reliance on the estoppel forms to terminate these tenancies."

offered a different interpretation of the estoppel certificates—arguing they "conclusively evidence that Plaintiffs' respective written lease agreements are in 'full force and effect' during the option periods of same[.]" In support of appellants' opposition, Finkle submitted a declaration describing her version of events and included copies of the leases, correspondence with Leonian about extending the lease terms and Leonian's acceptance of increased rental payments during the option periods, the sales brochure for the building and the estoppel certificates.

Following oral argument on January 3, 2020 the parties filed supplemental briefs primarily focused on the issue of whether the estoppel certificates were ambiguous, and, if so, whether the trial court should consider extrinsic evidence to interpret them. Art Works and Coffee + Food contended the ambiguity in the language of the certificates supported the court's consideration of extrinsic evidence (including evidence that appellants timely exercised their options to extend the lease terms) in interpreting the meaning and effect of the certificates. Appellants asserted "MCAP Partners' position that Plaintiffs are month-to-month tenants based on the Certificates is dishonest[,]" in part, because MCAP Partners had actual notice before the close of escrow that appellants had extended their lease terms. Defendants argued no extrinsic evidence was allowed to interpret the estoppel certificates because the certificates were clear and explicit, and controlled when the lease terms ended.

The trial court granted defendants' motion as to the first, second and seventh through 10th causes of action, finding the causes of action were "*entirely* based on allegations of protected activity with respect to Defendants[,]" i.e., service of the notices

8

to terminate. [10] The court also found appellants failed to demonstrate a probability of success on the merits. The estoppel certificates established Coffee + Food and Art Works were under month-to-month tenancies as of December 31, 2017 and February 28, 2018, respectively. The court found that even if Massachi's April 17, 2019 email improperly repudiated the leases or interfered with prospective economic relations, because the estoppel certificates were controlling, no liability could arise from Massachi's email.

Appellants timely filed a notice of appeal.

### 3. *Unlawful Detainer Proceedings*

Larchmont filed separate unlawful detainer complaints against Art Works and Coffee + Food (collectively tenants in the unlawful detainer proceeding) on October 10, 2019.[11] Tenants

---

[10] The trial court denied the motion as to the third and fourth causes of action for specific performance because those causes of action did "not concern the service of notice to terminate; instead, Plaintiffs allege Defendants failed to honor Plaintiffs' exercise of their rights to extend the term of their leases." The trial court also denied Massco's motion to strike the alter ego allegations.

[11] Upon respondents' unopposed request, we take judicial notice of the following documents from the unlawful detainer proceedings in case numbers 19STUD09867 and 19STUD09855: the verified complaints; the verified answers; documents filed by Larchmont in support of its motions for summary judgment; documents filed by tenants in opposition to the motions for summary judgment; the August 20, 2020 hearing transcript of the oral argument on the motions for summary judgment; the orders granting the motions for summary judgment; the judgments entered; and the notices of entry of judgment. (Evid.

9

answered the complaints alleging 26 affirmative defenses including unclean hands, estoppel, performance, waiver, bad faith, tenants' satisfaction of their obligations, fault of Larchmont and non-expiration of the leases.  The trial court in the civil action declined to relate the unlimited civil action and the unlawful detainer actions.

On July 21, 2020 Larchmont filed motions for summary judgment in the unlawful detainer matters and argued tenants wrongfully refused to vacate the premises consistent with the terms of the estoppel certificates that established tenants were in month-to-month tenancies.  Larchmont relied on the trial court's ruling on its anti-SLAPP motion in the civil action and asserted the ruling precluded tenants from relitigating the validity of the estoppel certificates.  Larchmont also contended tenants failed to timely exercise their options to extend their lease terms.

Tenants opposed summary judgment arguing it was inappropriate given the numerous factual and legal issues that needed to be decided including whether the estoppel certificates dictated tenants were in month-to-month tenancies.  Tenants argued they properly extended the lease terms for an additional five years and the estoppel certificates did not prove otherwise.  In support of this argument tenants filed a declaration from Finkle, documentary evidence and the transcript from Leonian's

---

Code, §§ 452, subd. (d), 459 subd. (a).)  We take judicial notice of the documents for the purposes of determining the issues that were actually litigated and necessarily decided in the unlawful detainer proceedings and their preclusive effect, if any, but """we do not take judicial notice of the truth of all matters stated therein.""" (*People v. Castillo* (2010) 49 Cal.4th 145, 157.) Respondents' request for judicial notice is otherwise denied.

deposition, which was taken in the unlawful detainer proceedings.

Following oral argument the court in the unlawful detainer matters granted Larchmont's summary judgment motions. The court found tenants were bound by the representations and lease expiration dates contained in the estoppel certificates. The fixed-term leases therefore expired on December 31, 2017 for Coffee + Food and February 28, 2018 for Art Works. Once the fixed terms expired the tenancies became month-to-month and Larchmont properly initiated unlawful detainer proceedings. The court entered judgments against tenants on August 20, 2020 and tenants did not appeal. Art Works and Coffee + Food vacated the premises on October 1, 2020.

On February 11, 2021 respondents filed a motion to dismiss this appeal as moot.[12] Appellants opposed the motion.

## DISCUSSION

1. *Relevant Law*

An appeal is moot when events make it impossible for the court to grant the appellant """"any effective relief.""""  (See *Newsom v. Superior Court* (2021) 63 Cal.App.5th 1099, 1109; *Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 866 ["'a live appeal may be rendered moot by events occurring after the notice of appeal was filed'"].)

---

[12] Respondents filed a request to file a reply brief in support of their motion to dismiss. The request was deferred to the panel designated to hear the merits of the appeal. The request is denied as unnecessary.

"'[A]n unlawful detainer judgment has limited [preclusive] force because it typically follows a summary proceeding focused only on deciding a party's right to immediate possession of property.'" (*Struiksma v. Ocwen Loan Servicing, LLC* (2021) 66 Cal.App.5th 546, 554; accord, *Malkoskie v. Option One Mortgage Corp.* (2010) 188 Cal.App.4th 968, 973.)  An unlawful detainer judgment, however, may bar subsequent litigation of issues that were fully litigated in the unlawful detainer proceeding.  (See *Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, 1327 [in the context of unlawful detainer proceedings "[issue preclusion] will only apply if the party to be bound agreed expressly or impliedly to submit an issue to prior adjudication [citation] and had a full and fair opportunity to litigate [citation] under circumstances affording due process protections"].)

"Issue preclusion prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action.  [Citation.]  Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824, italics omitted (*DKN Holdings*); accord, *In re Marriage of Brubaker & Strum* (2021) 73 Cal.App.5th 525, 537 (*Brubaker & Strum*); see also *Palm Springs Paint Co. v. Arenas* (1966) 242 Cal.App.2d 682, 688 ["[W]here a judgment becomes final while an appeal from a judgment in another action presenting the same issue between the same parties is pending, the first final judgment may be brought to the attention of the appellate court in which the appeal is pending and may be there relied upon as res judicata"].)  "[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first

suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*DKN Holdings*, at p. 825; accord, *Brubaker & Strum*, at p. 537.)

"'In considering whether these criteria have been met, courts look carefully at the entire record from the prior proceeding, including the pleadings, the evidence, the jury instructions, and any special jury findings or verdicts.'" (*Brubaker & Strum*, *supra*, 73 Cal.App.5th at pp. 537-538; see *Ayala v. Dawson*, *supra*, 13 Cal.App.5th at pp. 1326-1327 ["'the pleadings and proof in each case must be carefully scrutinized to determine whether a particular issue was raised even though some legal theory, argument or "matter" relating to the issue was not expressly mentioned or asserted'"].) Courts look to the factual allegations in each action to determine whether the earlier judgment decided an "identical issue." (See *Brubaker & Strum,* at p. 537; accord, *Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511-512.) "'[A]n issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding.'" (*Brubaker & Strum*, *supra*, at p. 537.) To establish that an issue was "necessarily decided" pursuant to prong three of *DKN Holdings* "require[s] only that the issue not have been "entirely unnecessary" to the judgment in the initial proceeding[.]'" (*Samara v. Matar* (2018) 5 Cal.5th 322, 327.)

If the threshold requirements are satisfied, "courts may consider the public policies underlying issue preclusion in determining whether the doctrine should be applied." (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 686; accord, *Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 879.) Those public policies include "'conserving judicial resources

13

and promoting judicial economy by minimizing repetitive litigation, preventing inconsistent judgments which undermine the integrity of the judicial system, and avoiding the harassment of parties through repeated litigation.'" (*Meridian, supra*, at pp. 686-687.)

2. *Issue Preclusion Renders the Appeal Moot*

Respondents contend the appeal is moot in light of the final judgments entered in the unlawful detainer actions. Respondents argue the issues surrounding the legitimacy of the estoppel certificates, and the related determination regarding when the leases expired, were decided in the unlawful detainer actions and are the same issues raised in the civil action (and in this appeal). Because these issues were fully litigated in the unlawful detainer actions, appellants are barred from relitigating these issues. Respondents also assert appellants voluntarily vacated the premises, which renders their appeal moot.

Appellants do not dispute that they were parties to the unlawful detainer actions and that the lawsuits resulted in final judgments against them. In their brief appellants maintain the unlawful detainer judgments do not moot their appeal because the only issue resolved was possession of the properties and their civil action seeks other relief—damages, attorney's fees and costs—unrelated to the issue of possession.[13] Appellants further argue they were not provided an opportunity to fully litigate the issues in the unlawful detainer actions that are raised in their

---

[13] Notwithstanding that contention, during oral argument appellants acknowledged that all their causes of action are premised on the continued validity and enforceability of their leases.

civil action, specifically they assert they were not allowed to depose Brehme.

To determine the issues that were actually litigated and necessarily decided in the unlawful detainer actions, we review the verified complaints, tenants' verified answers, the pleadings and evidence relating to Larchmont's summary judgment motions and the court's orders granting summary judgment. We conclude appellants had a fair opportunity to fully litigate the effect of the estoppel certificates, which is the central issue raised in this appeal in connection with the trial court's anti-SLAPP order.

The unlawful detainer proceedings below were more robust than a typical eviction case. Tenants asserted 26 affirmative defenses, including unclean hands, that "the lease by which [tenants] hold[ ] possession of the premises has not expired" and that Larchmont "is not entitled to a remedy because it breached the terms of the [lease] contract." Tenants also acknowledged, in their oppositions to Larchmont's motions for summary judgment, that the proceedings were "not a simple no-fault eviction case" noting the actions "involve[d] an ultimate determination of [a] myriad of issues, including . . . [w]hether [tenant] exercised its option to extend; [¶] [w]hether the estoppel certificate dictates that [tenant] is a month-to-month tenant; [and] [¶] [w]hether [Larchmont] is falsely characterizing the estoppel certificate to mean that [tenant] is a month-to month tenant." Tenants argued the estoppel certificates did not prove they were in month-to-month tenancies because of ambiguities in the certificates about when the term leases expired as well as evidence tenants had exercised their options to extend their leases.

15

In support of their oppositions tenants submitted a declaration from Finkle, which attached the leases, an email from Finkle to Leonian expressing her desire to exercise the options to extend the lease terms for both properties for another five years, text messages between Finkle and Leonian regarding the increased rent starting in March 2019, the estoppel certificates and the sales brochure for the building. Further, tenants submitted documents produced by Leonian, including documents showing tenants exercised their options to extend their leases and the 96-page transcript from Leonian's deposition, taken by tenants in the unlawful detainer proceedings.

The unlawful detainer court's detailed, 13-page orders further illustrate the issues raised by the parties and considered by the court. The court summarized tenants' arguments as follows: "(1) [tenant] exercised its option to extend the lease an additional five years . . . ; (2) the estoppel certificate does not clearly establish that [tenant] has been occupying the Property under a month-to-month tenancy . . . because it is ambiguous; (3) even if the estoppel certificate is unambiguous, it is void or voidable due to fraud; and (4) [tenant] is not barred by res judicata or collateral estoppel from challenging the estoppel certificate." The crucial factual question the court needed to resolve in the unlawful detainer action was whether a disputed issue of fact existed about when the lease terms expired. In order to address that question the court necessarily had to decide the impact, if any, the estoppel certificates had on the expiration dates. The court concluded no material dispute existed because, as a matter of law, the estoppel certificates controlled when the lease terms expired: "The language of the estoppel certificate is clear; by executing it [tenants] certified that the term of its

16

written lease with the prior owners of the Property—the Leonians—had expired some fifteen months earlier . . . ."[14]

Appellants maintain they were unable to fully litigate the estoppel certificates because the trial court denied their motion to consolidate the civil case and the unlawful detainer actions, and the unlawful detainer court denied appellants' request to "depose a key witness prior to the determinations of the sole issues of possession—Paul Brehme . . . ." Appellants fail to develop these arguments in their opposition to the motion to dismiss. They do not explain how the denial to consolidate the pending actions or the inability to take Brehme's deposition thwarted them from fully litigating the issue of the estoppel certificates. We treat the point as forfeited.[15] (See *Trinity Risk Management, LLC v. Simplified Labor Staffing Solutions, Inc.* (2021) 59 Cal.App.5th 995, 1008 [the failure to support a point with reasoned argument

---

[14] The court also addressed tenants' argument that the estoppel certificates were voidable due to fraud. The court noted that tenants failed to plead fraud as an affirmative defense in their answers but, in any event, that tenants failed to establish fraud in the absence of a misrepresentation and justifiable reliance. We observe in the first amended complaint there is no express allegation that the estoppel certificates were fraudulently induced or were themselves fraudulent, unlike in the original complaint, in which plaintiffs repeatedly pleaded the phrase "fraudulent estoppel certificates" over 40 times.

[15] Appellants also argue the unlawful detainer actions only resolved the question of possession. They are correct but that observation does not improve appellants' position because to resolve the question of possession the unlawful detainer court had to consider the estoppel certificates to determine when the leases expired.

17

and citations to authority results in waiver]; accord, *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 498 ["'We may and do "disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt."'"].)

There is no doubt that the effect of the estoppel certificates is the same issue raised both in the trial court and on appeal. Appellants' main argument on appeal is that the trial court incorrectly granted respondents' anti-SLAPP motion because their causes of action do not arise from protected conduct but rather from Larchmont and Massco "dishonestly decid[ing] to repudiate the Leases and the status of Plaintiff's tenancies in violation of such Leases and in bad faith, with no valid grounds for termination . . . ." However, we do not reach the issue of whether Massachi's email was protected activity because irrespective of the outcome appellants would not be afforded any meaningful relief in the trial court. In order to succeed on the causes of action struck by respondents' anti-SLAPP motion, appellants must prevail on the issue that respondents repudiated the leases by improperly relying on the estoppel certificates. Yet the unlawful detainer judgments conclusively establish the validity of the estoppel certificates, including the dates on which the leases expired. As a result, when Massachi sent his email purportedly repudiating the leases, the term leases had already expired.

The documents from the unlawful detainer proceedings confirm appellants had a full opportunity to present their arguments and evidence as to why the trial court should not have relied upon the estoppel certificates. The unlawful detainer court

18

considered and rejected appellants' position and entered final judgments against them.  Because the elements for issue preclusion are met as to the effect of the estoppel certificates, appellants are precluded from relitigating this issue in the trial court and on appeal.[16]  (See *Brubaker & Strum, supra,* 73 Cal.App.5th at p. 537; see *Samara v. Matar, supra,* 5 Cal.5th at p. 327.)

---

[16]    Appellants argue in their opposition to the motion to dismiss that applying issue preclusion "by the unlawful detainer judgments to this appeal does not comport with fairness and sound public policy."  This conclusory statement is not supported by argument or citations to authority and is deemed forfeited. (See *Trinity Risk Management, LLC v. Simplified Labor Staffing Solutions, Inc., supra,* 59 Cal.App.5th at p. 1008.)  In any event, we note the public policy considerations typically considered when applying issue preclusion—conserving judicial resources, minimizing repetitive litigation, preventing inconsistent judgments—are met here.

## DISPOSITION

The trial court's order on respondents' motion to strike is moot.  We reverse the order granting the anti-SLAPP motion and remand the matter to the trial court to vacate the order as well as the derivative order awarding attorneys' fees.


WISE, J.[*]


We concur:


PERLUSS, P. J.


FEUER, J.

[*]     Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.